WESTERN ASSUR. CO. v. SOUTHERN COTTON OIL CO.

(Circuit Court of Appeals, Fifth Circuit. June 4, 1895.)

No. 378.

MARINE INSURANCE—ESTOPPEL AGAINST INSURER—CERTIFICATE OF SEAWORTHINESS BY BOARD OF UNDERWRITERS.

It seems that a certificate by the inspector of a local board of underwriters that a certain vessel is in good condition, privileged to carry cotton seed and cotton to a certain amount, and that cotton and other merchandise shipped on her would be insured at the usual rates by the companies com-

posing the board of underwriters, estops a company which is a member of that board to question the seaworthiness of the vessel, as against a shipper of cotton seed thereon whom it insured shortly after the issuance of the certificate.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel by the Southern Cotton Oil Company against the Western Assurance Company to recover upon a policy upon a cargo of cotton seed shipped on board the model barge Charlie Pierce and damaged by the filling of that barge while moored at New Orleans. See Western Assur. Co. v. Southwestern Transp. Co., 68 Fed. 923. There was a decree below, based upon the report of a commissioner, in favor of libelant for $6,354.99. Defendant appealed.

Howe, Spencer & Cocke, for appellant.

Guy M. Hornor, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge. This is an appeal from a decree in admiralty condemning the appellant, as insurer of the cargo of the model barge Charlie Pierce, to pay the loss occasioned by the sinking of said barge on November 12, 1891. The whole contention is whether the barge was seaworthy. The evidence thereon is the same as in Western Assur. Co. v. Southwestern Transp. Co., (No. 377 of the docket of this court, just decided) 68 Fed. 923, and, on the issue of unseaworthiness of the barge, must be ruled the same way. At the same time, we notice that the case in favor of the Southern Cotton Oil Company, libelant in the court below, is much stronger than in favor of the libelant in No. 377. While the contract of insurance sued on assumes risks only "on all cotton seed in bulk or in bags owned by the assured, or consigned to them and shipped to their address in New Orleans on board good and seaworthy steamboats and barges," there is no contract, express or implied, on the part of the assured, that after shipment the steamboat or barge should continue in a seaworthy condition. Now, as we read the evidence, it is all in favor of the seaworthiness of the barge at the time the cargo was shipped, except the presumption which arises from the fact that November 12th, some 16 days thereafter, the barge sunk while tied up to a wharf in the port of New Orleans, and in the absence of known extraordinary perils of the river at the time. Shortly prior to the attaching of the risk under the policy in suit, and on the 28th of September, 1891, the inspector of the board of underwriters, to which board the respondent insurance company belonged, issued and delivered to the manager of the Southern Cotton Oil Company the following certificate:

"Office Board of Underwriters.

"No. 306.

"New Orleans, September 28, 1891.

"The undersigned having this day made a thorough examination of the model barge 'Charlie Pierce,' captain, Southern Transportation Company, and found

her in good order and well conditioned, privileged to carry 650 tons of cotton seed for Mississippi river and its tributaries, or 1,500 bales of cotton for Mississippi river only, and not on tributaries, does hereby certify that cotton or other produce or merchandise shipped on board of her will be insured at the usual rates of premium by the insurance companies composing the board of underwriters of this city, for one year from the above date, subject, however, to reinspection at any time. The above boat shall not tow any flatboat. barge, or other craft, except in case of distress.

　　"[Signed]　　　　　　　　　　P. C. Montgomery,
　　　　　　"Inspector of Hulls, Board of Underwriters."

As no fraud or concealment is alleged or suggested, there is strong reason for holding that the respondent insurance company is estopped by the said certificate of the board of underwriters, as against a shipper who relied thereon in making shipments and in taking insurance. It is true that Mr. Landry, president of the corporation which owned the barge, was also president of the corporation shipping the cargo; but, as it is not pretended that Mr. Landry, the common agent of the two corporations, knew or had any reason to know that the barge was even suspected of unseaworthiness, this common agency cannot affect the estoppel which ought to exist in the case. The decree appealed from is affirmed.