PADDOCK-HAWLEY IRON COMPANY, Respondent, v. THE PROVIDENCE-WASHINGTON INSURANCE COMPANY OF PROVIDENCE, RHODE ISLAND, Appellant.

St. Louis Court of Appeals, April 10, 1906.

1. MARINE INSURANCE: Inspection by Insurer: Admissions. In an action on a policy of marine insurance whereby the insured's barge was warranted by him to be seaworthy at the time of the issuance of the policy, evidence that the insurer on the request of the insured, before the issuance of the policy inspected and reported the vessel to be seaworthy and upon such report the plaintiff purchased it and caused it to be insured, was competent as an admission that the vessel was seaworthy at the time it was insured.

2. ———: Seaworthy Vessel: Instruction. In an action on a policy of marine insurance, an instruction to the jury authorizing a recovery upon a finding that the vessel insured was seaworthy on the fourteenth of March, when the policy was issued on the thirteenth of March, was harmless error.

4. ———: ———: ———. In an action on a policy of marine insurance against "unavoidable dangers of the river," the evidence is examined and held sufficient to submit to the jury the question whether an accident, by which the vessel insured was caught on a towhead among willows, was sufficient to cause the damage to the vessel by reason of which it afterwards sank.

5. ———: ———: Estoppel. In an action on a policy of marine insurance on a vessel which was warranted by the insured to be "seaworthy, tight and sound," where the vessel had been purchased by the insured after and by reason of an inspection, by the insurer, and report that the vessel was seaworthy, the insurer was estopped to deny that the vessel was seaworthy at the time of the issuance of the policy.

6. ———: ———: ———: **Presumption.** Being seaworthy at the time of the issuance of the policy, the vessel was presumed to continue in that condition until it was destroyed, and if the plaintiff proved its destruction, it was not necessary to go further and show the specific cause of the loss in order to make out a case.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Campbell & Thompson* for appellant.

(1)   The court erred in giving plaintiff's instruction 7, because: (a)   Said instruction required only that the barge be in a seaworthy condition "upon the date of leaving the port at St. Louis" (March 14, 1903), whereas, it was intended, under the policy, that the risk should begin at noon, March 13, 1903; and it is fundamental that even in the absence of an express stipulation in the policy requiring it, the vessel insured must be in a seaworthy condition at the inception of the risk, and if it is not, the policy will not attach. 1 Parsons, Mar. Ins. 368; 2 Parsons, Mar. Ins., 510, 511; 2 Arnold, Maritime Ins., 650-749; 19 Am. and Eng. Ency. of Law, 1001, 1003; 2 Cooley's Brief on Ins. 1254; Rogers v. Ins. Co., 46 N. Y. Sup. Ct. 65; Limelin v. Ins. Co., 1 Queb. Law Repts. 337; The Southwark, 191 U. S. 1; The Caledonia, 43 F. R. 681; 1 Parsons, Mar. Ins., 510, 511, 390, 399; 19 Am. and Eng. Ency. of Law, 1013; Higgie v. Am. Lloyds, 14 F. R. 143; Richelieu Nav. Co. v. Ins. Co., 136 U. S. 408.   (b)   It fails to require the jury to find that the barge remained seaworthy, as the parties had agreed it should, until it sank. Coons v. Ins. Co., 18 Upper Can. Comm. Pl. 305; 1 Parsons, Mar. Ins. 108. (c)   It predicates the loss of the barge upon injuries "received from running into willows and cottonwood trees near Island No. 8, and getting said barge out of said trees," whereas, there was no evidence that any

injuries were sustained from such a cause, nor was there any evidence that such incident of the voyage might reasonably have caused any injury either to his barge, or to any barge seaworthy for Mississippi river traffic. Coles v. Mar. Ins. Co., 3 Wash. (U. S.), 159; Swan v. Ins. Co., 3 Wheat. 168; Fleming v. Ins. Co., 4 Whart. 59; Long Dock Mill & Elev. Co. v. Ins. Co., 116 F. R. 886; The Northern Belle, 9 Wall. 526; The Southwark, 191 W. S. 16; Deshon v. Mar. Ins. Co., 11 Metc. (Mass.) 208; Burwind v. Greenwich Ins. Co., 53 N. Y. Sup. Ct. 102; 19 Am. and Eng. Ency. of Law, 1023. (d) It declares as a matter of law that if the loss was so occasioned, such loss was a result of an "unavoidable danger of the river," whereas, under the evidence, said towhead landing was but a usual incident of navigation on the Mississippi, and consequently any injury that might have resulted therefrom could not be considered as embraced within any of the perils insured against, and even though it could be, it was the jury's province to so determine. Thompson v. Whitmore, 3 Taunt. 227. Phillips v. Barber, 5 B. & Ald. 161; 1 Parsons Mar. Ins. 544; Magnus v. Buttemer, 11 C. B. 876; The Gulnare, 42 F. R. 861; Tysen v. Moore, 56 Barb. 442. (2) The court erred in giving plaintiff's instruction 3, because: (a) This instruction did not direct the jury's attention to any specific time when it was necessary that they should find the barge to have been seaworthy, tight and sound. (b) It permitted the jury to fix upon some purely speculative, imaginative, and it may be impossible "unavoidable danger of the river," having no existence in fact, and unwarranted by any testimony, as the cause of the sinking of the barge; whereas, the burden was upon the plaintiff to prove that the barge met with a peril such as would ordinarily cripple a seaworthy barge, and that such peril was the occasion of the disaster. Bullard v. Ins. Co., 1 Curtis (U. S.), 148; Van Vliet v. Ins. Co. 14 Daly (N. Y.) 496; Soelberg v. Assur. Co., 119 F. R. 23; Donnell v. Ins. Co., 2 Sumn. 366; 2

Phillips on Ins., sec. 241; Rogers v. Ins. Co., 12 Gray 613; Fleming v. Ins. Co., 12 Pa. St. 391 (4 Whart. 59); 2 Parsons, Mar. Ins., 518; 2 Arnold Maritime Ins., 727, 749; Baker v. Ins. Co., 12 Gray 603; Paddock v. Ins. Co., 11 Pick. 277; Burwind v. Ins. Co., 53 N. Y. Sup. Ct. 102; Richelieu Nav. Co. v. Boston Ins. Co., 136 U. S. 408.

*W. B. Homer* for respondent.

(1) The presumption of fact is that a vessel is seaworthy at the time of the taking effect of the insurance. This question, however, is not properly in the record because there was no instruction given by the court or offered by the defendant upon this question. Wood v. Two Barges, 46 Fed. 205; Ins. Co. v. Sherwood, 14 How. 362; Moores v. Louisville Underwriters, 14 Fed. 226; Nome Beach, etc., Co. v. Ins. Co., 193 Fed. 820. Patrick v. Hallett, 3 Johnson Cas. 76; Patrick, 2 Hallett, 1 Johnson Rep. 241; The Addatte, Fed. Cas. No. 75, 1 Fed. Cas. 166; Pickup v. Ins. Co., 3 Queens B. Div. 600. Cleveland Trans. Co. v. Ins. Co., 115 Fed. 436; Coons v. Ins. Co., 18 Up Con. Com. Pl. 305; Voisin v. Ins. Co., 65 N. Y. Supp. 333; Andrews v. Morill, 10 Com. P. Law R. 58. (2) It was not incumbent on the plaintiff to show to a certainty what caused the loss. Hassen v. Ins. Co., (1901), App. Cas. Law Rep. 362; Morrison v. Insurance Co., 28 Nova Scotia (1896), 346; Marcy v. Ins. Co., La. Ann. 264; Snethen v. Ins. Co., 3 La. Ann. 474; Rosenhein v. Ins. Co., 33 Mo. 237; Ins. Co. v. Smith, 124 U. S. 427.

BLAND, P. J.—After alleging that plaintiff and defendant are corporations, the petition avers, in substance: That on the thirteenth day of March, 1903, the defendant issued its policy of marine insurance, in which it insured in the amount of $2,200 plaintiff's barge No. 20, from noon on the thirteenth day of March, 1903, to noon on the thirteenth day of March, 1904, "against un-

avoidable dangers of rivers, of fires and of jettisons." The petition further states that prior to the issuing of the policy the plaintiff informed defendant that it was considering the purchase of this barge, and that the plaintiff was unfamiliar with such property, and that it would purchase the barge if defendant after inspection found the same to be seaworthy, and in all respects in proper repair and condition for river service, and in condition suitable and proper for issuing marine insurance thereon; that thereafter the defendant inspected the barge and reported to plaintiff that the same was seaworthy, whereupon plaintiff purchased the barge, and defendant issued thereon the policy of insurance in suit.

The petition further states that the barge on the fourteenth of March, 1903, in tow of the steamer, "Hill City," was taken to Grand Tower, Illinois, and from there was taken to Greenville, Mississippi, where a part of the cargo was taken from the barge, and that from Greenville the barge was taken back up the river to Arkansas City, Arkansas, arriving at said port on the twenty-fourth of March, 1903. That at the last mentioned port while the St. Louis & Arkansas Lumber & Manufacturing Company was loading said barge with lumber on the first of April, 1903, and when the barge was only partly loaded "the side or bottom of the hull of said barge commenced to leak, and almost immediately the barge sunk and was a total loss; that the sinking of said barge was caused by an unavoidable danger of the river; that the same was the result of unavoidable injury or accident to the said barge on the voyage from St. Louis to Arkansas City, the particulars of which accident and injury are unknown to plaintiff."

After averring that notice of the loss and proofs of loss were furnished in compliance with the policy, and the denial by defendant of all liability and refusal to adjust the loss, plaintiff asks for judgment in the sum of $1,999, which it avers is the amount it was damaged by said loss of said barge.

The policy of insurance is filed with the petition.

The answer, after admitting the incorporation of the plaintiff and defendant, the issuance of the policy as averred in the petition, the sinking of said barge while partially loaded and lying at the landing at Arkansas City, denies specifically that the sinking of said barge was caused by any unavoidable danger of the river, or by any of the perils insured against in said policy.

The answer further states that the barge, while lying at said landing, partially loaded, commenced to leak, and her whole side went out and she sank in a few seconds, that the sinking was not caused by any of the perils insured against in said policy; that the barge died a natural death, being old and rotten. The answer further avers that a condition precedent to the attaching of said policy was that the barge was seaworthy, at the time of the issuance of the policy, and fit to endure and sustain the ordinary and usual incidents of navigation on the Mississippi river; that when the policy was issued the barge was not tight and sound as required by the terms of the policy, but was weak and her timbers rotten, and was in an unfit condition to navigate, and was unseaworthy for such purpose. Further, that the barge continued and remained in such unseaworthy condition until she sank April 1, 1903; further that by reason of said unseaworthiness the policy of insurance never attached, and never had any force, effect, or validity. The answer further alleges the non-compliance with the following condition of the policy:

"That the said vessel shall be at all times during the continuance of this policy tight and sound, sufficiently founded in tackle and appurtenances thereto, competently provided with master, officers, crew, and all of the things and means necessary for the safe employment of said vessel."

The answer also alleges non-compliance with the following further condition of said policy:

"This policy shall be null and void while said vessel shall be unseaworthy."

The answer concludes with an averment that the vessel was not only unseaworthy from the date of said policy to the time of her loss, but at the time of her loss the vessel's deck beams were rotten, her top timbers were decayed, and that other important timbers under the decks were in a rotten condition, which together with her weakness and age rendered her utterly unseaworthy.

The reply was a general denial of the new matter in the answer.

The evidence is that the defendant is a foreign insurance company and, at the date of the issuance of the policy sued on, the firm of Carroll & Powell, of the city of St. Louis (of which Mr. Breck was a member), was its general agent; that in March, 1903, plaintiff was negotiating with the Wiggins Ferry Company for the purchase of their barge No. 20, built about the year 1880, but recently repaired; that Paddock an officer of the plaintiff company, about March tenth, called on Powell and informed him of the negotiations pending with the Wiggins Ferry Company for the purchase of the barge. Powell directed Paddock to see Breck, which he did, and told him he would purchase the barge provided it would pass an inspection for insurance, and if he (Breck) would insure it and the cargo. Breck said he would have an inspector examine the barge and report. Breck called up J. M. DeVoy, an experienced steamboat and barge builder and riverman, and asked him to make an inspection of the barge and report. DeVoy made an inspection and furnished Breck a written report of the condition of the barge, in which he stated that the barge would be seaworthy if some minor repairs of the top timbers were made. The repairs were made under DeVoy's supervision, and Breck then reported to Paddock that the barge was seaworthy and the defendant company would insure it. On receiving this report Paddock closed the deal for the purchase of the barge from the Wig-

gins Ferry Company and, on the thirteenth of March, the policy of insurance sued on was issued to the plaintiff, plaintiff paying Carroll & Powell the premium of two hundred and forty-two dollars, ten dollars inspector's fee and forty-nine dollars and forty cents for the repairs recommended by DeVoy. On the following day the barge, with a light cargo, consisting mostly of coal, was taken in tow by the steamer, "Hill City," and taken to Greenville, Mississippi, where it lay at the wharf for a few days and until the "Hill City" ran down the river to Vicksburg and returned. On its return the "Hill City" again took the barge in tow and carried it to Arkansas City and left it at the wharf to be loaded with oak lumber by the St. Louis & Arkansas Lumber & Manufacturing Company. After two hundred and eighty-four thousand feet of lumber had been loaded on the barge it sprung a leak behind the timbers and while the lumber was being removed for the purpose of getting at the leak, the barge collapsed, one side fell out and sunk and it became a complete wreck. The stage of water in the river, in March, 1903, was extremely high and on the way down the river, at Island No. 8, the night became so dark and the fog was so thick that the "Hill City" was unable to proceed and was of necessity, but purposely, run with the barge on to a towhead and into the growth of willows and cottonwoods, where both rested until daylight. The barge was drawing about three and one-half feet of water. The water was twelve feet deep where it and the "Hill City" rested on the towhead. The willows and cottonwoods at the surface of the water were none of them exceeding three inches in diameter. The evidence shows that some difficulty was experienced in pulling the barge off the willows and cottonwoods, but that no preceptible injury was caused. DeVoy, in answer to a hypothetical question on the foregoing facts, said: "Taking in the size of the willows, crowding a barge up against anything where the lower knuckle will get on the willows, and you have the weight of the

steamboat with a cargo now you are pressing, you are liable to lean the deck of the boat over, she catches on the lower knuckle and just like that (indicating) she is liable to go this way (indicating) with her deck almost off one side of the deck clamps."

Witnesses, who were on the "Hill City" and assisted in pulling the barge off the towhead, testified that it did not leak either before or after being pulled off and gave as their opinion, that it was not injured in the least by being run on and pulled off the towhead. The evidence tends to show that it was good seamanship to run the steamer and barge on the towhead, in the circumstances shown by the evidence. DeVoy and a number of other witnesses, acquainted with the barge, testified that it was seaworthy, and some of them, who were present at the time it sunk, testified that it was in a seaworthy condition when landed at the wharf at Arkansas City.

William Hayes, secretary and manager of the St. Louis & Arkansas Lumber & Manufacturing Company, testified that he superintended the loading of the lumber on the barge; that the lumber was dry oak; that he examined the barge before loading it and considered it seaworthy; that in loading, the lumber was evenly and properly distributed and, in his opinion, the sinking was caused "by a leak in one side of the barge, about one-third of the way from one end of the barge—it opened up very quick and got about a foot or eighteen inches of water in the side of the barge where the leak was, causing the barge to list to one side. I think then that the timber was not strong enough to hold the load, because the barge showed no signs of a leak or break until that leak opened up." Witness further stated that the barge showed no signs of a leak until loaded, and that the leak sprung during the progress of loading; that he saw samples taken from the timbers in the bottom of the barge after it sank and they were badly decayed; that he was satisfied from his examination that the barge could have

carried a much larger load than was on it at the time it sank; that after the barge sank and the water receded, he made an examination of the timbers—examined the broken timbers, and their general condition was as good as could be expected in a barge of her age; that some of them were rotten and some were new, but the general condition looked to be very fair. In regard to the seaworthiness of the barge, defendant's evidence tends to show that all the original beams and sills were very rotten; that the ends of some of the sills had been sawed off and new pieces spiked on, but the barge was not able to stand half the weight that was on it at the time it sank, and when it sank, it broke into fine pieces on account of the rotten condition of the timbers and died a natural death from age and decay.

At the close of the plaintiff's evidence and again at the close of all the evidence, defendant moved the court to instruct the jury that plaintiff could not recover. These instructions were denied, and the court gave the following instructions on the part of plaintiff:

"7. The court instructs the jury that if you find that the plaintiff was the owner of the barge in question at the date of issuing the policy and at the date of the loss, and further find that the barge in question was seaworthy and tight and sound upon the date of leaving the port at St. Louis, and that its loss was caused by injuries which said barge received from running into willows and cottonwood trees near Island No. 8 and the getting said barge out of the said trees, and that such landing was necessary on account of dense fog and high water, and that such landing was made with such care as the circumstances permitted, then the jury will be justified in finding that such loss was caused by the unavoidable danger of the river.

"3. The court instructs the jury that if you find that the plaintiff was the owner of the barge in question at the date of the issuing of the policy and at the date of the loss, and further find that the barge in question

was seaworthy and tight and sound, and that its loss was caused by some unavoidable danger of the river after leaving said port, you will find your verdict for the plaintiff, although the plaintiff has failed to show the specific danger which caused the loss of said barge.

"2. If the jury find for the plaintiff, and further find that the loss of said barge was total, they will assess its damages at the sum of nineteen hundred and ninety-nine dollars, with interest at six per cent from a date sixty days subsequent to the date of furnishing by the plaintiff to the defendant of proof of loss, if you find that demand was made at said time.

"1. The court instructs the jury that the only defenses offered in this case are that the barge was not seaworthy, and that she was not tight and sound, and that she did not sink as a result of an unavoidable danger of the river, and if you find from the evidence that she was seaworthy and tight and sound, and further find that the loss was occasioned by some unavoidable danger of the river, you will find a verdict for the plaintiff."

And the following for the defendant:

"1. The words 'seaworthy' and 'seaworthiness' and 'tight' and 'sound' as used in these instruction given by the court, mean the sufficiency of the barge mentioned in the petition, in materials, construction, equipment and outfit, for the trade or service in which it was employed.

"2. The court instructs the jury that under the policy offered in evidence in this case, plaintiff warranted that at all times during the continuance of the said policy, said barge No. 20, mentioned in plaintiff's petition in this case, was tight and sound, and if the jury find from the evidence that said barge was not tight and sound, and that while in such condition she sank at about the date alleged in the petition, then the court instructs the jury that under the contract between the parties in this case, said barge was not seaworthy, and that plaintiff cannot recover.

"3. The court instructs the jury that the defendant in and by its policy of insurance offered in evidence, insured the plaintiff against 'unavoidable dangers of rivers, of fires, and of jettisons;' and the court further instructs you that there is no evidence before you of the loss of plaintiff's barge by reason of fires or of jettisons; and the court further instructs you that the 'unavoidable dangers of river,' mentioned in the policy, are dangers which arise from the extraordinary action of the wind and waves, and from inevitable accidents directly connected with the navigation of rivers; and unless you find from the evidence that the loss of the barge was caused by some one of the 'unavoidable dangers of river,' you will find a verdict for the defendant.

"6. The court instructs the jury, that, under the pleadings and the evidence, the defendant is not estopped from showing, if it can, the unseaworthiness of the barge at the time that the policy in this case was issued."

1. The issues in the case were whether or not the barge was seaworthy at the time of the issuance of the policy of insurance and at the time it collapsed and sank. In the policy of insurance, the plaintiff warranted the barge to be seaworthy and, ordinarily, the burden would have been upon it to substantiate this warranty by competent evidence. The evidence does not conclusively show that the barge encountered any peril, sufficient to cause it to sink, on its trip from St. Louis to Arkansas City. Running it on the willows and cottonwoods at Island No. 8 and dragging it therefrom may have weakened it, as shown by the evidence of DeVoy. But is seems to us that the evidence to the effect, that at plaintiff's request, defendant, through its agents at St. Louis, inspected the barge for plaintiff, as well as for itself, for the purpose of ascertaining whether or not it was seaworthy and insurable and then reported to the plaintiff that it was seaworthy, thereby inducing plaintiff to accept the policy and pay the premium thereon, ought to estop the defendant to claim that the barge

was unseaworthy, and on this admission of its seaworthiness, plaintiff was entitled to have his case submitted to the jury.    This evidence, however, was objected to by the defendant, and its admission is assigned as error. The ground of the objection is, that the inspection made by the defendant's agents and the report thereon, having been made before the policy of insurance was issued, did not estop the defendant from setting up the defense of unseaworthiness.    The argument is, that the policy of insurance is the conclusion of the matter and the sole and only evidence of the contract that should have gone to the jury; that the negotiations prior to its issuance are merged into the terms of the policy and should have been excluded.    The trial court concurred in the view, that the defendant was not estopped to set up the defense of unseaworthiness, as is shown by the sixth instruction given for the defendant.    But as the court admitted the evidence and afterwards refused to strike it out, it must have been of the opinion that the evidence was competent for the purpose of showing that defendant admitted the barge to be seaworthy at the time it issued the policy of insurance.    That the evidence was admissible for this purpose, we entertain no doubt and think the court properly sent the case to the jury.

2.    The policy was issued on the thirteenth day of March, 1903, while the barge was lying at the St. Louis wharf.    It was taken in tow by the steamer "Hill City" on the following day.    Plaintiff's instruction (No. 7) told the jury that if they found the barge was seaworthy on the fourteenth of March, etc., they should find for plaintiff.    Under this instruction it is contended by defendant that it was not necessary that the jury should find the barge was seaworthy on the date the policy was issued, to authorize them to find for plaintiff.    Technically, the instruction is, in this regard, erroneous, but the error is of so trifling importance it should not be seized upon for the purpose of reversing the judgment, espec-

ially in view of the fact that there is no evidence whatever that the condition of the barge on the fourteenth of March was different from its condition on the thirteenth. It is also insisted that the instruction is erroneous for the reason it failed to require the jury to find the barge remained seaworthy until it sank. The policy provides that the barge "shall at all times during the continuance of the policy be in a seaworthy condition, tight and sound," and the instruction should have incorporated this provision as a condition precedent to plaintiff's right of recovery; but here again, we think the error was non-prejudicial, for the reason the evidence is all one way that it remained tight and sound, that it did not leak until it sprung a leak and sunk at Arkansas City, and, hence, there was no room for the jury to find that it had not been kept tight and sound from the date of the insurance, so far as human eye could discover. It is also contended that the instruction is erroneous because it predicates the loss of the barge upon injuries received from running it into the willows and cottonwoods at Island No. 8 and getting it out again. The evidence that the barge received injuries at Island No. 8 is very slight. It was the opinion of those present at the time that it was not injured in the least; but the expert evidence of Captain DeVoy, to the effect that the sides and timbers of the barge were probably strained by pushing it over the trees and pulling it back, seems to us reasonable, and was sufficient, in our opinion, to submit this feature of the evidence to the jury. The facts are different from those in the case of The Northern Belle, 9 Wall. 526, wherein the court arrived at the conclusion that the accident to the barge was "in all probability, an ordinary rub over a sandbar, which the barge in her decayed condition, could not stand without leaking." The running of the barge on the towhead was an unusual and unavoidable danger of the river, in its then extraordinary high state of water, and was not like the rubbing of a boat or barge over a sandbar in the

ordinary state of the water and which is an ordinary risk in navigating the river.

3. The third instruction is criticised on the ground that it did not confine the jury to any time in which they should find the barge was seaworthy, tight and sound. The phrase, "seaworthy, tight and sound," construed by what precedes it in the instruction, plainly refers to the dates when the barge was insured and when it went to pieces and became a total wreck. It is further contended that it is erroneous in that it relieves the plaintiff of the burden of showing the specific cause of the loss, and permitted the jury to seize upon some purely speculative danger of the river as having caused the loss. If the barge was seaworthy when the policy was issued, a fact which we think the defendant is estopped to deny, under the evidence (City of De Soto v. Ins. Co., 102 Mo. App. l. c. 5, 74 S. W. 1; Trust Co. v. Ins. Co., 79 Mo. App. 362; Springfield Steam Laundry Co. v. Ins. Co., 151 Mo. 90; 52 S. W. 238; Western Assur. Co. v. Southern Cotton Oil Co., 68 Fed. 924), it seems to us that the reasonable presumption is, it remained seaworthy until the time it sank, there being no evidence to the contrary.

In Western Assur. Co. v. Southern Cotton Oil Co., supra, at page 925, the court said: "Now, as we read the evidence, it is all in favor of the seaworthiness of the barge at the time the cargo was shipped, except the presumption which arises from the fact that November 12th, some sixteen days thereafter, the barge sunk while tied up to a wharf in the port of New Orleans, and in the absence of known extraordinary perils of the river at the time. Shortly prior to the attaching of the risk, under the policy in suit and on the 28th of September, 1891, the inspector of the board of underwriters, to which board the respondent insurance company belonged, issued and delivered to the manager of the Southern Cotton Oil Company the following certificate:

" 'Office Board of Underwriters, No. 306.

New Orleans, September 28, 1891.

" 'The undersigned having this day made a thorough examination of the model barge "Charlie Pierce," captain, Southern Transportation Company, and found her in good order and well conditioned, privileged to carry 650 tons of cotton seed for Mississippi river and its tributaries, or 1500 bales of cotton for Mississippi river only, and not on tributaries, does hereby certify that cotton or other produce or merchandise shipped on board of her will be insured at the usual rates of premium by the insurance companies composing the board of underwriters of this city, for one year from the above date, subject, however, to reinspection at any time. The above boat shall not tow any flatboat, barge, or other craft, except in case of distress.

(Signed)                    " 'P. C. MONTGOMERY,

" 'Inspector of Hulls, Board of Underwriters.'

As no fraud or concealment is alleged or suggested, there is strong reason for holding that the respondent insurance company is estopped by the said certificate of the board of underwriters, as against a shipper who relied thereon in making shipments and in taking insurance. It is true that Mr. Landry, president of the corporation which owned the barge, was also president of the corporation shipping the cargo; but, as it is not pretended that Mr. Landry, the common agent of the two corporations, knew or had any reason to know that the barge was even suspected of unseaworthiness, this common agency cannot affect the estoppel which ought to exist in the case." The judgment for the assured was affirmed.

The above case is very much like the one at bar. None of the plaintiff's officers or agents ever saw the barge. Paddock, representing the plaintiff, bought the barge on the report of defendant's inspector, that it was seaworthy, and insured it and paid the premium on the strength of that report, and it seems to us that no strong-

er case to hold the plaintiff estopped to deny the seaworthiness of the barge could be made. And the warranty that, "the barge is and shall at all times during the continuance of the policy be tight and sound," was complied with by showing that it was seaworthy at the time the policy was issued, and that its condition was not changed until it was lost; for if the barge was seaworthy on the thirteenth of March, in the absence of any evidence of any cause for its loss, the presumption is that the loss was occasioned by a peril of the river, and there is no more reason for requiring the plaintiff to prove the exact peril which caused the loss than there would be to require a plaintiff in a suit on a policy insuring his dwelling house against loss by fire to prove the exact origin of the fire. The admission of the defendant, that the barge was seaworthy, as was said by Pollock, C. B., in Parfitt v. Thompson, 13 Meeson & Welsby's Rep. l. c. 394, "enures for all purposes. . . . It appears to me, that, if the vessel had foundered in a perfectly calm sea, from a leak occasioned by rottenness, on the day after the policy was effected, the underwriters would have been liable." Concurred in by Parke, Gurney and Rolfe, BB. The issue of fact was unseaworthiness and it was for the jury to say whether the barge was lost on account of its unseaworthiness or on account of a peril of the river, notwithstanding the lack of evidence as to the exact cause of its sinking. [Morrison v. Nova Scotia Marine Ins. Co., 28 Nova Scotia 346.]

In March et al. v. Ins. Co., 14 La. Ann. l. c. 265, the court said: "It is true that the burden of proof is upon the plaintiff to make out his case; but the proper rule of evidence is, that when a party insures against perils, all of which cannot be seen or known, that the loss shall fall upon the insured, when it proceeds from a cause not known or that might have existed, but which is not satisfactorily proved, on the presumption that the vessel was not seaworthy. But if this presumption be rebutted and it be shown that the vessel was staunch,

strong and in a seaworthy condition, and there is no suggestion or proof of fraud, then the plaintiff is not bound to prove the identical cause of the loss, but may show a possible cause."

In Snethen v. The Memphis Insurance Co., 3 La. Ann. 474, a barge case, the barge was suddenly discovered to be leaking heavily and sinking on the second day after her departure from St. Louis on the way to New Orleans. None of the witnesses undertook to point out the specific cause of the accident, as that the barge struck a snag or sandbar, or incurred any other evident casualty. The proof tended to show she was seaworthy. Judgment was recovered against the insurance company which was affirmed on appeal, the court holding that it was not indispensable to the right of recovery that plaintiff should prove the exact cause of the accident.

Cases are cited by defendant in which it is held that where defects are found in a vessel during her voyage or on her arrival at port of destination, they are not presumed to have resulted from a peril of the sea, if there is no evidence that the vessel was seaworthy or if her seaworthiness is left in doubt at the outset of the voyage. [Bullard v. Roger Williams Insurance Co., 1 Curtis 148; VanVilet v. Greenwich Ins. Co., 14 Daly 496; Baker et al. v. Manufacturers' Ins. Co., 12 Gray 603.] The same is true of insurance on the cargo of a vessel (2 Parsons on Marine Insurance, p. 518), "as there is in every such contract of insurance an implied warranty of seaworthiness of the vessel in which the goods are shipped (2 Arnold on Marine Insurance, p. 650); and in such cases questions of the seaworthiness of the vessel and the cause of the loss are both questions of fact for the jury." [2 Arnold on Marine Insurance, 1148.] But this class of cases has no application to cases where there was an admission by the insurance company or underwriters, that the vessel was seaworthy at the outset of her voyage; if seaworthy at the outset,

the legal inference is that the vessel will withstand the ordinary perils of the voyage, and if it sinks or is lost at sea from an unknown cause, the reasonable presumption is that the loss was occasioned by an unavoidable peril of the sea.

4. The criticism of plaintiff's instruction (No. 1) is disposed of by what is said in the foregoing paragraphs of this opinion.

5. Defendant asked a number of instructions which were refused. Those given in its behalf, we think, were sufficient to cover all the issues of fact in the case; indeed, it seems to us, that on the evidence, that defendant inspected the barge for the purpose of ascertaining whether or not it was seaworthy and insurable, at plaintiff's request and then reported to plaintiff that it was seaworthy and insurable, thereby inducing plaintiff to purchase it and insure it and pay the premium of insurance, on the proof of the loss of the barge, through no fault of those having it in charge, by a cause or causes unknown, the trial court would have been justified in directing a verdict for the plaintiff.

The judgment is for the right party and is affirmed. All concur.