## NEW ORLEANS, T. & M. RY. CO. v. UNION MARINE INS. CO., Limited, et al.

(Circuit Court of Appeals, Fifth Circuit. January 20, 1923.)

No. 3863.

**1. Insurance ☞388(1)—Requiring certificate of inspection held not to waive warrant of seaworthiness.**

A requirement by a marine insurance policy covering a cargo that it be shipped on a vessel holding a certificate of inspection from the board of underwriters does not waive the warranty of seaworthiness of the vessel, or estop the insurance companies from questioning its seaworthiness, where the certificate which it possessed entitled it to the rate of premiums specified if maintained in seaworthy condition, and expressly stated it did not guarantee seaworthiness, or waive the guaranty of seaworthiness or its continuance.

**2. Insurance ☞273—Implied warranty of seaworthiness can be excluded only by clearest language.**

In marine insurance policies, where the law will imply generally a warranty of seaworthiness, such warranty can only be excluded by terms in writing in the policy in the clearest language.

**3. Insurance ☞402—Marine policy insures only against perils named.**

A policy of marine insurance insures only against the perils named in the contract.

**4. Insurance ☞404—Sinking of barge held not due to peril of the river.**

Where a barge sank at the dock while being loaded, on a calm day, when the river was still, and the evidence tended to show the sinking was caused by the opening of her seams under the sun's heat, the sinking was not due to a peril of the sea (river), within a policy insuring the cargo against such peril, so that there was no liability on the policy, even if the breach of warranty of seaworthiness had been waived.

Appeal from the District Court of the United States for the New Orleans Division of the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel in personam by the New Orleans, Texas & Mexico Railway Company against the Union Marine Insurance Company, Limited, and others. Decree for respondents, and libelant appeals. Affirmed.

George Janvier, of New Orleans, La., and Robert H. Kelley, of Houston, Tex. (Andrews, Streetman, Logue & Mobley, of Houston, Tex., and Janvier & Heller, of New Orleans, La., on the brief), for appellant.

Henry P. Dart, Jr., of New Orleans, La. (T. Catesby Jones, of New York City, Dart, Kernan & Dart, of New Orleans, La., and Bigham, Englar & Jones, of New York City, on the brief), for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The New Orleans, Texas & Mexico Railway Company, a corporation (hereinafter called libelant), brought a libel in personam against Union Marine Insurance Company, Limited, Fireman's Fund Insurance Company of San Francisco, and Williamsburg City Fire Insurance Company (hereinafter styled insurers), to recover the sum of $16,200, with interest (subject to a credit of $160.25),

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon three several contracts of marine insurance, one by each insurer, each covering one-third of an amount, not exceeding $45,000, by which said insurers severally insured libelant against the perils of the seas (river), fires, pirates, rovers, jettisons, assailing thieves, criminal barratry of the master and mariners, and all other like perils, losses, and misfortunes, on certain sacks of borate in the possession of libelant as a carrier, being loaded on barge at Chalmette and to be transported on the river to Stuyvesant Docks at New Orleans, La.

The insurance was issued to the Pacific Coast Borax Company, but was for account of whom it may concern. It is admitted by counsel for insurers, by brief filed in this court and in his argument, that the insurance was for the benefit of libelant. The insurance contracts provided that the barges used in transporting the borate should each hold a certificate of inspection of the board of underwriters of the port of New Orleans, an organization to which each of said insurers belonged.

Three barges belonging to Whiteman Bros. were engaged for such transportation, each of which held such a certificate. This certificate, as to the barge in question in this case, was dated March 18, 1916, and recited her examination, and, being found in apparent good order and well conditioned for navigating the Mississippi river harbor of New Orleans, permitted to carry 500 tons cargo, and that said cargo would be insured for the usual rate of premium by the insurance companies comprising the board of underwriters for one year from date, "if maintained in seaworthy condition." It further provided:

"This certificate is issued for the purposes of the insurance companies only, and is not intended as a guaranty of seaworthiness, nor is it intended to in any wise waive the guaranty of seaworthiness and continuance of seaworthiness required."

The libelant was loading barge No. 5, of the capacity of 500 tons. When she had received about 320 tons, it was perceived that she had taken about 10 inches of water in her. It was testified that, owing to the very hot weather, her seams above water line when empty had opened and the oakum in them had come out; that the water could be heard pouring into the barge. The owner of the barge Whiteman denied this, and testified that the manner of loading the barge by the libelant was improper, and had caused the seams to open and the barge to fill with water. He was not present at any time during the loading of the barge or the loss of the cargo. The barge so filled with water that she was submerged until the water covered her deck, on which the cargo was placed, careened, and spilled all of her cargo, but 368 sacks, into the river. There was no wave or other movement of the water in the river which caused her to sink or careen; she was at the dock, in perfectly still water, when the occurrence happened.

It is further shown by the testimony that about 3 o'clock in the afternoon, over two hours before the occurrence, Barnett, an official of libelant in general charge, was informed by a subordinate that the barge was leaking. At his direction, Whiteman's office was telephoned and informed of this condition, and promised to send a tug. No tug was furnished. After an hour and a half, the condition of the barge appearing dangerous, and there being at hand in the dock a dredge-

boat able to pump her out, Barnett·was notified of this situation and asked for authority to employ the dredgeboat. He called up Whiteman, and sought such authority from Whiteman, which was declined, on the ground that Whiteman was sending a tug. Barnett thereupon declined to authorize the employment of the dredgeboat to pump out the barge. About three-quarters of an hour later, the tug arrived and started to pump out the barge, which in the meantime had been tied up to the dock with cables; but, in about five minutes after the tug had commenced, the barge broke from her cables, sunk in the water, and careened, with the loss of cargo above stated.

The principal defense made by the insurers was that the barge was unseaworthy, and that the loss occurred by reason of this condition, which relieves them of liability. The libelant replies that the usual warranty of seaworthiness was waived in this case by the requirement of the insurers that the barges employed should hold certificates of the New Orleans board of underwriters. The District Court found on the facts that the barge was unseaworthy, and on that ground held the insurers not liable.

[1] The libelant relies on the case of Western Assur. Co. v. Southern Cotton Oil Co., 68 Fed. 924, 16 C. C. A. 67, as establishing the position that a certificate of inspection by such board will estop its members from questioning the seaworthiness of a vessel insured by such member. The certificate issued in that case was furnished at the time of the insurance to the assured. It was an absolute certificate of the seaworthiness of the vessel, made but a short time before, with no qualification or reference to the warranty of seaworthiness. In the present case, the certificate is made on March 18th. The risk attached on June 8th. This certificate certifies that the cargo is for one year entitled to the rate of premium specified for the barge, "if maintained in seaworthy condition," and also that the "certificate does not guarantee seaworthiness or waive the guaranty of seaworthiness or its continuance." Had such certificate been furnished to the assured in the case in 68 Fed. 924, 16 C. C. A. 67, it would have been advised by the terms of the certificate that no waiver of guaranty of seaworthiness was made by its issuance, and the decision in that case would not probably have been to the effect that the insurer by furnishing such certificate waived such guaranty.

[2] In this case there is no contention that any express waiver of the guaranty of seaworthiness was made, but only a requirement that the barges to be used should hold certificates. In policies where the law will imply generally a warranty of seaworthiness, it can only be excluded by terms in writing in the policy in the clearest language. Arnould on Marine Insurance, § 686.

But, whether these policies contained such an implied warranty or not, we do not think that the loss covered in this case is within the perils insured against by them.

[3] An insurance policy only insures against the perils named in the contract of insurance. Fawcus v. Sarsfield, 6 El. & Bl. 192, 204.

[4] Here the evidence showed that no peril of the river, but the unseaworthiness of the barge, caused the loss. Unquestionably the barge

sank from water entering through open seams. The evidence preponderates in favor of the finding of the District Court that the seams above the water line had been opened by the hot sun, and the oakum therein was loose or had fallen out entirely, thus causing her to fill with water when in the course of loading these seams were forced below the water line, and that the loss occurred by reason of this unseaworthy condition.

An unseaworthy condition of the vessel at the time the insurance attaches is not a peril of the sea (river), and under a policy where there is no warranty of seaworthiness, express or implied, a loss of vessel or cargo, by reason of such unseaworthiness is not covered by such policy. Arnould on Marine Insurance, § 799; Fawcus v. Sarsfield, 6 El. & Bl. 192, 204; Sassoom & Co. v. Western Ass. Co., [1912] A. C. 561, 563.

The judgment of the District Court is affirmed.