PETER MARCY et al. *v.* SUN INSURANCE COMPANY OF NEW YORK—RICHARD SALTER *v.* same, and HYDE & MACKIE *v.* CRESCENT MUTUAL INSURANCE COMPANY.

Where the insurance is against river risks, and it is shown that the loss was from a peril of the river, and a possible cause is specified, it being also shown that the vessel was sea-worthy, the plaintiff (the insured) has done all in his power and has made out his case.

The liability of the insurer, except so far as limited by the policy, must be judged of by the nature of the property insured, the risks to which it was subjected, and the natural accidents to which it is liable

Where the vessel is sea-worthy, and there is no suggestion and proof of fraud, the plaintiff is not bound to establish the identical cause of the loss, but may show a possible cause.

APPEAL from the Sixth District Court of New Orleans, *Cotton, J.*
*T. Gilmore, P. E. Bonford* and *C. Roselius,* for plaintiffs.  *M. M. Cohen, Randall Hunt* and *J. A. Maybin,* for defendants.

COLE, J.  Plaintiffs claim the amount of insurance of a certain dock, known as the " Old Dry Dock."

· On the 19th of March, 1855, the dock being employed in its usual and legitimate business in the Mississippi river, opposite the city of New Orleans, was sunk for the purpose of taking in a ship for repairs.  The workmen, not being able to raise her as usual, caused the ship to be withdrawn, and efforts to be made to raise her.

These attempts to save the dock were unsuccessful ; she sunk and became a total loss.

This cause was heretofore before us, and was remanded for a new trial, on account of an exception to the charge of the District Judge.  It is reported in 11 An. p. 749.

The case was submitted to the jury upon the same evidence as at the first trial,

and they having been instructed in conformity with the principles decided by this court, rendered a verdict in favor of plaintiff for the amount claimed. Defendant has appealed from the judgment thereupon.

The principal difficulty in this case is as to the cause of the loss of the dock.

It is insisted that the cause of the loss must be shown, otherwise that the insurer cannot be held liable.

This proposition does not appear to be correct, when carried to the extent contended for by the defendant.

The insurance is against river risks; when, then, it is shown that the loss was not caused by a land, but by a marine peril, that the vessel was sea-worthy, and a possible cause of the loss is specified, the plaintiff has then done all in his power.

The perils are not only above, but also below the water.

When the loss takes place without apparently being produced by the violence of the winds and waves, or some external cause, all that the insured can do is to establish the vessel to have been sea-worthy.

The liability of the insurer, except so far as limited by the policy, must be judged of by the nature of the property insured, the risks to which it is subjected, and the natural accidents to which it is liable.

A dock moored to the wharf is not exposed to the same dangers as a steamer making distant voyages: the former is not so much in danger of collision, of snags and many other perils that might be enumerated; and the plaintiff must be supposed to have insured against the river risks to which she would be most liable; the insurers must also be considered to have had them in their view when they signed the policy.

It is true that the burden of proof is upon the plaintiff to make out his case; but the proper rule of evidence is, that when a party insures against perils, all of which cannot be seen or known, that the loss shall fall upon the insured, when it proceeds from a cause not known or that might have existed, but which is not satisfactorily proved, on the presumption that the vessel was not seaworthy. But if this presumption be rebutted and it be shown that the vessel was staunch, strong and in a seaworthy condition, and there is no suggestion and proof of fraud, then the plaintiff is not bound to prove the identical cause of the loss, but may show a possible cause. For as the defendant undertook to insure against perils below the water as well as above, it was then well known to the contracting parties that a loss might occur which could not be explained, and all that the insured could do would be to prove the vessel was seaworthy. If this were not so, the insurer would be paid for insurance against perils above and below the water, whilst he would only in certain cases be liable for losses from accidents above the water. If such had been the intention of the insurer, it ought so to have been explained in the policy.

Such appears to have been the opinion of this court in the case of *Snethen* v. *Memphis Insurance Co.*, 3d An. p. 474.

In that case the action was upon a policy on merchandize loaded on a barge in tow of a steamer.

The barge was suddenly discovered to be leaking badly and sinking, on the second day after the departure from St. Louis, on the way to New Orleans.

No specific cause could be given for the accident, as that the barge struck a snag or sand-bar, or incurred any other evident casuality. One of the witnesses conceded, however, that an external peril might occur, and sufficient to cause the sinking of a boat, without being observed at the moment.

34

MARCY
*v.*
SUN INS. CO.

The court gave judgment for plaintiff, on the ground that the testimony established the barge to have been seaworthy at the commencement of the voyage, that accidents proceeding from perils of the river, might occur to produce a leak and eventually a loss, without being at the moment perceived, and that some such peril must have been the operating cause of the loss of the barge.

In *Dupeyre* v. *Western Marine and Fire Insurance Co.*, 2 R. 458, the court said, " when a vessel is lost in consequence of some of the perils insured against, the presumption is in favor of her seaworthiness, and it is incumbent upon the underwriters to show that this warranty has not been complied with ; but when, as in the present case, a loss occurs which cannot be ascribed to stress of weather or to any accident which might by possibility have produced it, the fair and natural presumption is, that the vessel was defective and not seaworthy, and the burden of proving that, in fact, she was seaworthy, is then thrown on the insured." 1 Philips on Insurance, 308, 324.

In the case at bar the evidence establishes the dock to have been seaworthy, and the weight of the vessel taken in not to have exceeded the capacity of the dock.

A possible cause for the loss is also shown.

The manner of sinking a dock is to open the valves, and when the desired quantity of water is obtained, the valves are closed ; the water is then pumped out and the dock rises with the ship. The docks have sinking and discharging valves.

One of the witnesses thinks that if one of the valves had been open her twelve pumps could not have relieved her.

The greatest risk of the dock was the sinking and raising.

There are parcels of drift-wood running round in the Mississippi river, and driven by changeable currents. Sometimes when the valves are open for the purpose of sinking a dock, the chips of wood get into the valves and choke them so that they cannot be shut down, and the consequence is that the water continues to rush in. One of the witnesses testifies that he knows of no other cause of the sinking of the dock than this.

Defendant contends, however, that this is an ordinary every day risk, and that he cannot be considered to have insured against ordinary but only extraordinary perils.

It may be said of almost every risk, that it is an ordinary one, but at the same time, a vessel meets with accidents from them only occasionally.

The entrance of a small quantity of chips into the valves might be deemed an ordinary peril, but the flowing in of a sufficient number to prevent the valves being closed and to cause the dock to sink, must be considered an extraordinary peril. If not, docks would constitute stock of very little value, for it would be an ordinary every day risk, that the valves would become choked up, and that the docks would sink.

When the nature of the dock is contemplated, it was just as much an extraordinary peril that she should be sunk by chips entering the valves, as that a steamer should be sunk by striking a snag. There are snags in many places in the Mississippi river and boats may be sunk by them, but they are often escaped or passed over in safety ; so the valves of docks are liable to be filled with chips so as to render it impossible to close them, but to effect this, the current must be in a direction towards the valves, and the chips must be of a certain size and number.

The case of *Millaudon* v. *New Orleans Insurance Co.*, 4th An. p. 16, is not antagonistical to the opinion of the court in this case.

The court there decided that the insurers will not be responsible where the sugar and molasses are covered by an ordinary fire policy, and the loss is occasioned by an explosion of the steam-boilers used in the manufacture of the sugar. The court remarked, that so far as relates to the insurance, they were unable to distinguish a loss occasioned by the explosion of the boiler, from that caused by the breaking or derangement of any other part of the machinery.

In the case at bar, the possible cause of the loss is not a derangement of the machinery of the dock, but the action of external causes in a violent and unusual manner upon the valves of the dock, by which they were prevented from closing and the dock was sunk.

This cause was tried before two juries, who, after having weighed the testimony, and the latter under instructions directed by this court, have decided in favor of plaintiff. The evidence is of such a nature that we would not feel justified in interfering with their verdict.

Judgment affirmed, with costs.

MERRICK, C. J., concurring. This case having been remanded for a new trial, the District Judge charged the jury in conformity with the views expressed by the court on the former appeal. 11 An. 748.

The jury found a second time for the plaintiff, and from an examination of the testimony I am unable to say that it is unsustained by the proof. I, therefore, concur in this decree.

VOORHIES, J., absent.