MASSEY STEAMSHIP COMPANY v. IMPORTERS AND
EXPORTERS INSURANCE COMPANY OF NEW YORK.[1]

July 28, 1922.

No. 22,877.

**Marine insurance—recovery upon policy without proof of cause of loss.**

Under a contract of marine insurance the insured may recover for
the loss of the vessel by sinking without showing specifically what
caused her to sink or that she sank as the result of an encounter with
a peril of the sea covered by the policy. When he produces evidence
that the vessel was seaworthy at the inception of the risk, had been
put in repair and passed an inspection recently made, was well rated
by the American Bureau of Shipping, and behaved well on previous
voyages, but suddenly sprang a leak, a jury may reasonably infer that
the vessel was lost by a peril insured against, although unable to ascer-
tain from the evidence what such peril was.

Action in the district court for St. Louis county to recover $500
upon a marine insurance policy. In its answer defendant denied,
on information and belief, that the loss of the steamship was caused
by any of the perils insured against in the policy of insurance, and
alleged, on information and belief, that any loss of said steamship
was caused solely by its unseaworthiness. The case was tried be-
fore Dancer, J., who when plaintiff rested denied defendant's motion
for a directed verdict, and a jury which returned a verdict for the
amount demanded. From an order denying its motion for judg-
ment notwithstanding the verdict or for a new trial, defendant ap-
pealed. Affirmed.

*Warren, Cady, Hill & Hamblen, Spencer & Spencer, Carl V. Essery,
George S. Brengle* and *Bingham, Englar & Jones,* for appellant.

*Washburn, Bailey & Mitchell* and *Kelley & Cottrell,* for respondent.

LEES, C.

In 1916 plaintiff purchased the steamship Ferdinand Schlesinger,

[1]Reported in 189 N. W. 415.

a wooden vessel of 2,607 tons burthen, constructed in the year 1891 and operated in the bulk freight trade upon the Great Lakes. In the spring of 1919, plaintiff procured marine insurance upon the steamer in the amount of $80,000, of which $50,000 was hull insurance and $30,000 in the form of disbursement policies. The insurance extended for one year from April 30, 1919. The defendant is one of the insurance companies which issued the hull policies.

While on a voyage from Erie, Pennsylvania, to Port Arthur, Ontario, with a cargo of coal, the steamer suddenly sprang a leak and sank in deep water in Lake Superior. This was one of the actions against the several insurance companies to recover for the loss, and resulted in a verdict for plaintiff. Defendant offered no evidence, but moved for a directed verdict at the close of plaintiff's case. The usual alternative motion for judgment or a new trial followed and was denied and defendant appealed.

There are 37 assignments of error. No one of them is specifically argued, the argument, both written and oral, being directed to one point, thus stated in appellant's brief:

"The loss which is the basis of this suit was not shown to have resulted from any of the perils covered by the policy, and the court, upon evidence offered by plaintiff tending to show that the steamer was seaworthy, allowed the jury to speculate as to how it occurred, without any basis of fact whatsoever having been proved. * * * Defendant's position was squarely raised by its motion for directed verdict, its requests to charge, and its motion for judgment notwithstanding verdict and new trial."

We do not consider the assignments not argued and come directly to the one question before us.

As the case is presented here, the question to be decided must be considered in the light of our rulings that judgment notwithstanding the verdict will not be ordered for error in submitting issues to the jury, or if, from all the facts developed at the trial, it appears probable that plaintiff has a cause of action. Bennett v. Great Northern Ry. Co. 115 Minn. 128, 131 N. W. 1066; Koski v. Chicago, M. & St. P. Ry. Co. 116 Minn. 137, 133 N. W. 790; Daily

v. St. Anthony Falls W. P. Co. 129 Minn. 432, 152 N. W. 840; Maijala v. Great Northern Ry. Co. 133 Minn. 301, 158 N. W. 430; Wampa v. Lyshik, 144 Minn. 274, 175 N. W. 301.

The question is one of law, and may be thus stated: Under a contract of marine insurance, may the insured recover for the loss of a vessel without showing specifically what caused the loss and that it was caused by a peril of the sea covered by the policy?

Two clauses in the policy are involved. The first known as the Inchmaree clause, reads thus:

"This insurance also specifically to cover (subject to the above free of average warranty) loss of, or damage to the hull or machinery, through the negligence of master, mariners, engineers or pilots, or through explosions, bursting of boilers, breaking of shafts, or through any latent defect in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the owners of the vessel or any of them, or the manager."

The second, or general insuring clause, is worded as follows:

"Touching the adventures and perils which the said Assurers are content to bear and do take upon themselves by this policy, they are of the inland seas and water, enemies, pirates, rovers, thieves, fires, explosions, collisions, jettisons, barratry of the master or mariners, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of said vessel, or any part thereof."

Both parties have treated the contract as maritime in its nature and as governed by the principles of maritime law, although the action was brought and tried in a common law court having concurrent jurisdiction with court of admiralty over actions brought on policies of marine insurance. We have accordingly endeavored to ascertain the principles of that body of law which are applicable to such a contract as we have here. The question has not heretofore come before this court. An examination of the decisions in other jurisdictions discloses an irreconcilable conflict of authority.

The trial judge instructed the jury, in accordance with the great

weight of authority, that there was an implied warranty that the Schlesinger was seaworthy at the inception of the risk on April 30, 1919, and that the policy did not attach if the steamer was then unseaworthy; that the phrase "and all other perils, losses and misfortunes, etc.," at the end of the second clause we have set out, means only perils which are of like kind to those previously enumerated, and that "the adventures and perils * * * of the inland seas and waters" to which this clause refers, mean extraordinary as distinguished from ordinary occurrences—such happenings as would imperil a staunch vessel and cause her loss or damage, and not such as the winds and waves may ordinarily bring to pass. These instructions were favorable to defendant and became the law of the case.

Up to this point there is no serious dispute in the arguments of counsel. The point of divergence is reached when plaintiff asserts that, if it be shown that a vessel was seaworthy at the inception of the risk, the burden of proving that a loss occurred by reason of unseaworthiness rests upon an insurer who resists payment on that ground. In this connection our attention is called to the answer which alleges that the loss was caused solely by the unseaworthiness of the Schlesinger. The evidence showed that the voyage from Erie was uneventful. No storms were encountered. There was no stranding or grounding and no collision, and yet the steamer sank. It appeared that the hull had been thoroughly repaired during the winter of 1917-1918; that the vessel was inspected by the American Bureau of Shipping in March, 1919, and rated at 90; that it was in fit condition to carry and had carried grain and other cargoes which must be kept dry. The local inspectors for the United States made their annual inspection on July 20, 1918, and issued a certificate good for one year, reciting that they found that the Schlesinger conformed in all things to the requirements of the laws of the United States and the regulations of the Board of Supervising Inspectors of Steam Vessels. The first trip in 1919 began on May 1, when a cargo of salt was carried from Ludington, Michigan, to Duluth. The second was from Two Harbors to Erie with a cargo of pulpwood. On this trip a gale was encountered, but the steamer rode

well and did not take any water. The return trip from Erie to Port Arthur was the last. In the afternoon of May 25 a leak was sprung. The water gained on the pumps. At 11 o'clock in the evening the vessel had become water-logged, could not longer be steered and was abandoned, but remained afloat until about 6 o'clock on the following morning.

The captain had a theory that the hull had been damaged at the dock at Erie where the pulpwood was unloaded. The depth of the water was not sufficient to float the heavily laden steamer, and, following the usual practice, the pulpwood in the forward end was first unloaded, and, when the steamer floated, it was worked ahead and more pulpwood was unloaded, and the process repeated until the entire cargo was discharged. The lake bottom at the dock was of smooth rock. The captain gave it as his opinion that, when the unloading took place, the hull struck against some object under the water and a plank was stove in, but not far enough to admit water until Lake Superior was reached. There rougher water forced it farther in and sprung the leak which caused the sinking. This suggests a possible cause for the accident, but the theory rests on no substantial foundation of fact.

There was also some evidence that in locking through the Sault canal the wall of the lock was hit harder than usual, but the trial judge directed the jury not to consider this as a possible cause of the leak. As we read the record, plaintiff's case rests on the hypothesis that, since the undisputed evidence strongly tends to show that the Schlesinger was seaworthy when the insurance policies were written, the unexplained ingress of water in such quantities as to send the steamer to the bottom of Lake Superior less than a month later is necessarily and logically attributable to a latent defect in or an accidental injury to the hull and hence a prima facie case of liability was established.

On the other hand, defendant vigorously contends that plaintiff must go farther to make out a prima facie case and must prove that in fact there was a latent defect in the hull, or an accidental injury to it, or, as set forth in the brief, that plaintiff must affirmatively show that the loss occurred from a peril specifically covered by the

policy.  It is asserted that not only did plaintiff fail to supply the necessary proof, but that the circumstances attending the sinking indicate that the hull was so old, worn and decayed that the steamer was unseaworthy and sank from inherent weakness.  Upon a somewhat similar state of facts it was held in Anderson v. Morice, L. R. 10 C. P. 58, that the cause of the sinking of a ship should be left to the jury.  It was shown that the ship suddenly began to leak and sank at her anchors in port in fine weather, that she had recently been put in thorough repair and careful surveys of her had been made just previously and that she behaved well on previous voyages and on her voyage to the port where she was lost.  No evidence was given of any facts showing the cause of her loss, although possible explanations by way of conjecture were suggested by the witnesses. It was the opinion of the court that there would be an irresistible inference of unseaworthiness if a ship sank in smooth water without any apparent cause and there was no other evidence as to her condition; but, when there was other evidence of the nature already mentioned, the fact of the ship's sinking became one of several facts which must all be left to the jury, and if they concluded on the whole evidence that the ship was seaworthy, they might find that she was lost by a peril of the sea, though unable to ascertain or safely conjecture what such peril was.

It was said by Brett, J., [at page 68] that

"The immediate visible cause of the loss in such a case is the foundering of the ship.  If that was not the result of unseaworthiness existing at the inception of the risk, it is difficult to see  *  *  * how that could have been caused by anything but some extraordinary though invisible and unascertained accident of the seas."

The reasoning of the court seems to us to be logical and convincing.  It was approved in Swift v. Union Ins. Co. 122 Mass. 573. Upon the same line of reasoning, other courts have sustained verdicts for the plaintiff where there was a failure to prove the specific cause of the loss.  Hillman Transportation Co. v. Home Ins. Co. 268 Pa. St. 547, 112 Atl. 108; Marcy v. Sun Ins. Co. 14 La. Ann. 264; Paddock & Co. v. Ins. Co. 118 Mo. App. 85, 93 S. W. 358.  In

other cases it has been held that, as between the insured and the insurer, the burden of proving the unseaworthiness of a vessel rests upon the insurer. Bullard v. Roger Williams Ins. Co. 1 Curtis, 148, 155 Fed. Cas. No.2,122; Lunt v. Boston Marine Ins. Co. (C. C.) 6 Fed. 562, 568; Moores v. Louisville Underwriters (C. C.) 14 Fed. 226; Fireman's Fund Ins. Co. v. Globe Nav. Co. 236 Fed. 618, 149 C. C. A. 614. The same rule is stated in 2 Arnould, Marine Ins. (10th ed.) § 725.

Some courts have ruled that the presumption is in favor of seaworthiness, but when a ship springs aleak without having met with any peril, this raises the presumption that she was unseaworthy when she sailed, but the presumption may be rebutted by proof of actual seaworthiness at the time of sailing. The Gulnare, 42 Fed. 861; Berwind v. Greenwich Ins. Co. 114 N. Y. 231, 21 N. E. 151; Snethen v. Memphis Ins. Co. 3 La. Ann. 474, 48 Am. Dec. 462. Others have held that when a ship founders in fair weather, it should be inferred that she was lost because of inherent weakness and the underwriters are not liable for the loss unless the assured shows that his ship received an external injury of a character coming under the denomination "perils of the sea." Paddock v. Franklin Ins. Co. 11 Pick. (Mass.) 227; Treat v. Union Ins. Co. 56 Me. 231, 96 Am. Dec. 447. We refrain from further mention of the various utterances of the courts.

We are of the opinion that the true doctrine is stated in Anderson v. Morice, supra. It is applicable to the facts in the case at bar. The jury was clearly justified in concluding that the Schlesinger was seaworthy on and after April 30, 1919. The result of the inspection of the hull, following repairs made the year before, the behavior of the steamer on the voyages of 1919 and during the gale encountered on one of them, the manner in which the Erie dock was approached and the possibility of an unknown object on the bottom which might do injury to a wooden vessel, the sudden appearance of the leak and the rapidity with which the water entered, and the location of the leak in the forward portion of the hull, make up a body of facts and circumstances hardly consistent with any

theory, other than that there had been an unusual external injury to the hull or that a latent defect existed in it.

The Schlesinger sank in 840 feet of water. It is impossible to ascertain the precise cause of the disaster. But, even though the jury might not safely conjecture what it was, they could nevertheless conclude, as they did in Anderson v. Morice, that it must have resulted from a peril of the sea or that there must have been a hidden defect in the hull, and in either case the loss was covered by the policy. Plaintiff made a sufficient showing to go to the jury and the motions for a directed verdict and for judgment were properly denied.

Order affirmed.