## ZILLAH TRANSPORTATION COMPANY v. AETNA INSURANCE COMPANY AND OTHERS.[1]

October 19, 1928.

No. 26,824.

**Warranty implied in policy of marine insurance.**

1. In a policy of marine insurance on a vessel, there is an implied warranty that the vessel is seaworthy at the inception of the risk, and the policy does not attach if the vessel is then unseaworthy. As between the owner and the insurer, the burden of proving a breach of such warranty rests upon the insurer.

**Burden of proof resting on insured and on insurer.**

2. The burden of proof rests upon the insured to show that the loss of the vessel was caused by some risk or hazard insured against by the policy. If seaworthiness at the inception of the risk and beginning of a voyage is established and loss occurs, the inference may be drawn that the loss was caused by a peril of navigation or a latent defect, hence covered by the policy, unless the evidence shows otherwise.

Evidence examined and *held* sufficient to sustain the verdict.

[1]Reported in 221 N. W. 529.

**No reversible error in giving or refusing requested instructions.**

3. Alleged errors in giving and refusing requests to charge examined and *held* not to show reversible error.

Evidence, 22 C. J. § 14 p. 68 n. 43.

Marine Insurance, 38 C. J. § 210 p. 1073 n. 69; § 265 p. 1097 n. 2; § 532 p. 1176 n. 34; § 534 p. 1177 n. 44, 45; § 560 p. 1184 n. 13; § 577 p. 1189 n. 97.

See note in 31 A. L. R. 1378; 14 R. C. L. 1437; 5 R. C. L. Supp. 821.

Five actions in the district court for St. Louis county to recover upon policies of marine insurance issued by defendants (Aetna Insurance Company, Connecticut Fire Insurance Company, Standard Marine Insurance Company, U. S. Fire Insurance Company and Union Marine Insurance Company) to cover loss of the hull, machinery, etc. of the steamship Zillah owned by plaintiff. The cases were consolidated for trial. There was a verdict in each case for the plaintiff (Aetna, $2,339.75; Connecticut, $1,253.20; Standard, $1,566.50; U. S. $783.25; Union, $939.90) and defendants appealed from an order, Kenny, J. denying their alternative motions for judgment or a new trial. Affirmed.

*Abbott, MacPherran, Dancer, Gilbert & Doan, Single & Single, Horace T. Atkins* and *Loring R. Lecraw,* for appellants.

*Washburn, Bailey & Mitchell* and *Brown, Ely & Richards,* for respondent.

OLSEN, C.

Plaintiff, from 1902 and up to the time of its loss on August 29, 1926, was the owner of the steamship Zillah, registered at the port of Duluth and used in transportation of freight on the Great Lakes. Defendants are underwriters, engaged in the business of marine insurance. On August 12, 1926, defendants issued to plaintiff a policy of marine insurance for the term of one year upon the hull, machinery, etc. of this steamship. On August 29, 1926, the ship sank in Lake Superior and was totally lost. Proofs of loss were duly furnished and demand for payment of the insurance made and refused. The insurance policy was what is known as a several and

not joint policy, and each defendant insured in a specified amount only. Separate suits were brought against the defendants. The actions were consolidated for trial and tried together. A verdict was returned in plaintiff's favor in each case. Each defendant moved in the alternative for judgment notwithstanding the verdict or a new trial and, the motions having been denied, each defendant appeals to this court from the order denying its motion.

1. The first two assignments of error are that the court erred (1) in denying defendants' motions for directed verdicts at the close of the testimony, and (2) in denying their motions for judgment notwithstanding the verdicts. These assignments raise the one question whether the evidence is sufficient to sustain the verdicts returned by the jury. Farmers Co-op. Exch. Co. v. U. S. F. & G. Co. 150 Minn. 126, 184 N. W. 792.

The insurance policy sued upon is a contract of marine insurance. Counsel agree that the only two issues for trial were first, whether or not the steamship Zillah was seaworthy on August 12, 1926, when the insurance was written; second, whether or not the loss of the vessel was caused by any of the risks or hazards insured against by the policy. The question presented for review by the assignments mentioned then is the sufficiency of the evidence to sustain the findings by the jury that the vessel was seaworthy at the inception of the risk on August 12, 1926, and that the loss of the vessel resulted from perils and risks insured against by the policy.

That there was an implied warranty by the insured that the vessel was seaworthy at the inception of the risk, and that the policy did not attach if the vessel was then unseaworthy appears to be conceded. The law is so stated in our case of Massey S. S. Co. v. Importers & Ex. Ins. Co. 153 Minn. 88, 189 N. W. 415, 31 A. L. R. 1372, usually referred to as the Schlesinger case. The policy in question is a time policy for one year, as distinguished from a voyage policy. The warranty of seaworthiness in a time policy is complied with if the vessel is seaworthy at the commencement of the risk. Union Ins. Co. v. Smith, 124 U. S. 405, 8 S. Ct. 534, 31 L. ed. 497. In 38 C. J. pp. 1072-1073, it is stated that the English and Canadian

courts hold there is no such warranty in a time policy, but that the weight of authority in this country is to the effect that, if the vessel is in port at the time of the commencement of the risk, there is an implied warranty of seaworthiness for the port risk and that before sailing the vessel will be made seaworthy for the voyage. But if the vessel is at sea at that time, there is no warranty that she is then seaworthy. Nor in the absence of any statutory provision is there a warranty that the vessel will be seaworthy at the commencement of subsequent voyages. In New York and Massachusetts it is held that the warranty extends to an undertaking by the insured to use due diligence to maintain the vessel in a seaworthy condition during the continuance of the policy. A number of cases are cited.

The ship Zillah was in a port at the time the insurance was written and thereafter made and completed two or more voyages before commencing the voyage on which she was lost.

Counsel disagree as to which party had the burden of proof on the question of seaworthiness. That question is but indirectly involved in the consideration of the sufficiency of the evidence. However the court charged that this burden rested upon the defendants, and this is assigned as error. We believe the charge was correct. The Schlesinger case, 153 Minn. 88, 189 N. W. 415, 31 A. L. R. 1372, does not expressly so state, but indicates the rule to be that defendant has the burden of proof on this issue. The general rule is that the burden of proof rests on defendant to prove a breach of warranty or condition relied upon to defeat recovery. It seems reasonable to hold that where a written contract is duly executed and delivered and full consideration therefor paid, he who claims the contract did not become operative has the burden of so proving.

As between the owner and insurer, the burden of proving that the vessel is unseaworthy rests upon the insurer in ordinary cases. Batchelder v. Ins. Co. of N. A. (D. C.) 30 F. 459; Thames & Mersey M. Ins. Co. v. Pac. Creos. Co. (C. C. A.) 223 F. 561; Fireman's Fund Ins. Co. v. Globe Nav. Co. (C. C. A.) 236 F. 618; American Mer. M. Ins. Co. v. M. M. Ford Corp. (C. C. A.) 269 F. 768; American

Mer. M. Ins. Co. v. Liberty S. & G. Co. Inc. (C. C. A.) 282 F. 514. State courts generally follow the same rule.

The evidence here made the seaworthiness of the vessel Zillah at the inception of the risk a question of fact for the jury, and the finding of the jury on that issue is sustained by sufficient evidence.

2. On the second issue, the burden of proof rested upon the plaintiff to prove that the loss of the vessel was caused by one or more of the risks and perils insured against. The sufficiency of the evidence to sustain the verdict on that issue is seriously challenged.

On August 27, 1926, the Zillah was loaded with limestone at Kelley Island, Lake Erie, and departed therefrom about 10:20 a. m. on a voyage to Duluth. The vessel proceeded up through Lake Erie, Lake Huron, and through the river and locks at Sault Ste. Marie, and into Lake Superior. It foundered and sank near Whitefish Point in Lake Superior at about 11 a. m. on August 29, 1926. The sinking was caused by water leaking into the hull of the vessel faster than the pumps could remove it. Waves were encountered on Lake Huron sufficient to cause a change of course for a time but not sufficient to constitute a peril of the sea. There was no storm or unusual weather encountered on Lake Superior. The weather was clear, the water not rough, and the wind from 8 to 12 miles an hour at the time of the sinking. Just what caused the excessive leakage was not discovered. The vessel sank in deep water, and no examination of the hull could be made.

The insurance policy is in the usual terms and insures, among other things, against risks and perils of navigation on inland seas and waters and against loss caused by latent defects of hull and machinery. The two clauses specifying the risks insured against are the same as those set out in the opinion in the Schlesinger case.

Defendants contend that the plaintiff failed to prove that the loss was the result of one or more of the risks enumerated in the policy. It was incumbent upon the plaintiff here to show that the loss of the vessel was caused by perils of navigation on the inland seas, or latent defects of hull or machinery, or both. The plaintiff presented evidence to show proper examination and inspection of the

vessel prior and up to the time the insurance was written, the staunch construction and condition thereof, and that it was seaworthy up to the time the leak developed; that such leakage as there was prior to that time was the ordinary leakage of the vessel and not such as to endanger it or make it unseaworthy; that the excessive leakage which caused the loss developed after the passage of the locks and river at Sault Ste. Marie, a few hours before the sinking, and that it did not become apparently dangerous until it was too late to reach harbor or save the vessel. There was also evidence that the vessel was unevenly loaded at Kelley Island, which it is claimed may have caused a strain or twisting of the hull; that in passing through the locks the vessel was warped or slapped against the wall of the lock so as to cause a severe blow or bump. Plaintiff claims the leakage may have been caused by these incidents or by some latent defect in the hull. Defendants contend that the incidents referred to were not sufficiently important to constitute perils of navigation and that it is not shown that they caused the loss. They also contend that where a vessel sinks from leakage in a calm sea the presumption arises that the sinking was caused by inherent deterioration, wear and tear, or unseaworthiness of the ship, which were not insured risks. They show that this was a wooden vessel 36 years old, and claim that the leakage testified to by plaintiff's witnesses as of times long prior to the sinking showed unseaworthiness, and that such was the cause of the sinking.

38 C. J. pp. 1176-1177, attempts to state the rule deduced from the cases there cited substantially as follows: That if, without apparent cause, a vessel suddenly sinks in port, or shortly after the voyage has commenced springs a leak or founders, there is a presumption of unseaworthiness, and it is incumbent upon the plaintiff to rebut the presumption. This presumption however is merely one of fact which shifts the burden of proof and prevails only where it is unrepelled by other proof, and no presumption of unseaworthiness arises except from facts which would exclude the rational inference of loss attributable to the perils of the sea. This rule is apparently followed in such cases as Moores v. Louisville

Underwriters (C. C.) 14 F. 226; Anderson v. Morice, L. R. 10 C. P. 58 (Eng.); Walsh v. Washington M. Ins. Co. 32 N. Y. 427; Paddock-Hawley I. Co. v. Providence-Washington Ins. Co. 118 Mo. App. 85, 93 S. W. 358; Delanty v. Yang Tsze Ins. Assn. 127 Wash. 238, 220 P. 754. In the annotations to the Schlesinger case, 31 A. L. R. 1378, the author, after stating that the holdings of the court are varied and no general rule covering all of them can be deduced, states that the weight of authority would seem to be that, in the absence of any circumstance aside from the mere sinking to show a loss from causes outside the terms of the policy, the insured need only show that the vessel was seaworthy at the inception of the risk to raise a presumption of loss by perils of the sea, or at least an inference from which the jury may so conclude.

We make no attempt to analyze or harmonize the decisions. A consideration of all the evidence leads to the conclusion that, if the circumstances of the sinking of the vessel raised any presumption of fact that the vessel foundered because of unseaworthiness, there was nevertheless sufficient evidence of seaworthiness at the inception of the risk and up to the time of the loss to make the issue a question of fact for the jury and to justify the finding that the vessel was lost by reason of a peril of the sea, insured against, or by reason of latent defects in the hull, also insured against. We hold the verdict sustained by sufficient evidence.

3. The assignment that the court erred in denying the motion for a new trial, that motion having been made on two distinct grounds, presents no question for review. The remaining assignments of error are directed to the giving of some of plaintiff's requests to charge and the refusal to give certain requests presented by defendants. The court gave plaintiff's second request, to the effect that if the jury found the vessel seaworthy at the inception of the risk, and that the vessel sank because of either a latent defect or a peril of the sea, then they should return a verdict for plaintiff even though it were impossible to determine which of the two was the actual cause. In connection therewith the court charged that:

"All of the jury, if your verdict is a unanimous one, or five-sixths of the jury, if you are not able to agree unanimously within the

first twelve hours, must be agreed that the loss was due to one or the other of these perils which are insured against. You need not be agreed as to the specific one, but before the plaintiff can recover a verdict at your hands you must all be agreed, or five-sixths of you at least, that the loss was due to one or the other of these perils which I have referred to and which are insured against by this policy."

It is claimed that this would permit the jury to disagree as to the specific cause of the sinking and yet return a verdict, so long as they agreed that the sinking was caused by a risk insured against. The particular part of this charge here objected to is the phrase, "you need not be agreed as to the specific one." It is a sufficient answer to this objection that at the trial the only exception or objection to this part of the charge was that the court erred in giving plaintiff's second request, and that is also the assignment of error. The request so challenged did not contain the statement objected to, and was given by the court without that statement. The additional charge given by the court on its own motion in connection therewith, if it modified the request in any way, should have been then called to the attention of the court and excepted to. The request as presented and given is conceded to be a correct statement of the law, if the evidence justified the submission to the jury of the issues of loss because of latent defect and peril of the sea.

Counsel quote with approval language from the record in the Schlesinger case, 153 Minn. 88, 189 N. W. 415, 31 A. L. R. 1372, and from the "Lakeland" cases, reported in 20 F. (2d) 619, in the same words as this request. Irrespective of the lack of sufficient exception, the court, in the request given and in connection therewith, by the language quoted, clearly and repeatedly stated that the jury must be agreed that the loss was caused by one or the other of the perils insured against, even if they were unable to determine the specific cause. Read in connection with the entire statement and the whole charge, the language objected to would seem to mean no more than that, and was not such as to mislead the jury, even if it

were technically incorrect. The statement of the court in its memorandum to the order denying the motion for a new trial, in reference to this question, has not been overlooked.

Plaintiff's third request, given by the court, was in substance that if the vessel was improperly loaded and was subjected to a strain while out on the sea as a result thereof, and afterwards was lost by reason thereof, and such loss was not from want of due diligence by the owner or manager, then plaintiff was entitled to recover. It is urged that damage to a vessel by loading operations is not a peril of the sea. The instruction does not refer to damage caused by loading while in port, but to damage thereafter caused by strain while out on the sea. As such it seems unobjectionable.

Plaintiff's fourth request, as given, was that the clause insuring against latent defects "covers the loss of the vessel by reason of a latent defect, even, though such latent defect rendered the vessel unseaworthy, and it then follows that there is no implied warranty of seaworthiness against such a latent defect, and unseaworthiness of the vessel solely because of such latent defect would not prevent the policy from attaching, and in the event of the loss of the vessel by reason of such latent defect, your verdict should be for the plaintiff."

The court did not give this request in the exact language noted. It treated the question of latent defect, in connection with the implied warranty, in several distinct paragraphs of the charge, none of which are assigned as error. Taking the charge as a whole, in connection with the evidence to which it relates, the proposition as presented to the jury was that if there were latent defects in the hull of the ship, existing at the time the insurance was written but then unknown and not discoverable upon proper inspection, and the vessel some weeks thereafter developed leakage from such defects and was lost by reason thereof, then that was a risk insured against; and that, if such defects existed at the time the policy was written, that did not violate the implied warranty of seaworthiness if the vessel was then seaworthy. In the case of Mellon v. Federal Ins. Co. (D. C.) 14 F. (2d) 997, recovery was permitted for the bursting of a boiler, presumably because of some latent de-

fect existing therein at the time of the insurance. And while the recovery is placed on other grounds, it is difficult to understand how recovery could have been upheld if it were held that an unknown latent defect existing at the time of the insurance rendered the vessel unseaworthy so that the policy did not attach.

The court refused to give defendants' 23rd request. We agree with the trial court that this was a mere specification of one thing not insured against, and that the general charge clearly specified what risks were insured against and the facts necessary to be found in order to sustain the recovery. The court charged that the defendants did not insure the vessel against leakage, unless and only in case such leakage was caused by one of the perils of the sea or some latent defect. It charged repeatedly that the burden of proof rested on the plaintiff to prove that the loss was caused by one or the other of these risks.

Defendants' 16th assignment, that plaintiff has the burden of proving its case by specific facts and proving a specific cause of loss, is not in harmony with the Schlesinger case, 153 Minn. 88, 189 N. W. 415, 31 A. L. R. 1372, and other authorities.

Defendants' 13th request, standing alone would not be a complete statement of the law as to the burden of proof. At most, where the evidence shows seaworthiness at the inception of the risk, the fact that a ship is lost without apparent sea peril at the time, or accident, would, in those courts applying the rule of the shifting of the burden of proof, raise a rebuttable presumption of fact which plaintiff was then required to overcome by proof of seaworthiness. The rule generally followed in this state is to rest the burden of proof on the party who has the affirmative of the issue at the commencement of the trial. McEleney v. Donovan, 119 Minn. 294, 138 N. W. 306. The question has been considered to some extent in treating the subject of sufficiency of the evidence.

Defendants' other requests, not given, have been examined. They have not been much argued and we find nothing therein requiring further consideration. Taking the charge as a whole, it quite clearly presented the issues and the law applicable thereto.

Plaintiff sought recovery under the law as announced in the Schlesinger case. In that case the court stated [153 Minn. 92]:

"Plaintiff's case rests upon the hypothesis that, since the undisputed evidence strongly tends to show that the Schlesinger was seaworthy when the insurance policies were written, the unexplained ingress of water in such quantities as to send the steamer to the bottom of Lake Superior less than a month later is necessarily and logically attributable to a latent defect in or an accidental injury to the hull and hence a prima facie case of liability was established."

Plaintiff was permitted to recover on that hypothesis. The rule approved was that where the evidence was sufficient to show seaworthiness at the inception of the risk, which was shown by evidence as to proper inspection, good condition of the hull and behavior on prior voyages, and the vessel suddenly sprang a leak and was lost, the jury might reasonably infer that the loss was caused by a peril insured against, although unable to ascertain from the evidence what such peril was. In considering the evidence in that case, that the vessel might have been injured in unloading, the court said [153 Minn. 92]:

"This suggests a possible cause for the accident, but the theory rests on no substantial foundation of fact."

Such injury, if any, was therefore not a basis for recovery.

Consideration has been given to the claim that the facts in the Schlesinger case necessarily are not identical with the facts in the present case. There it is stated that the vessel suddenly sprang a leak. How suddenly the leak occurred in the Zillah does not appear. Like most wooden vessels, it had at all times some leakage. A short time before the sinking it was discovered that the vessel leaked excessively. The excessive leakage may have started suddenly. It was at least sudden in the sense that it appeared a short time before the vessel became waterlogged and sank.

Order affirmed.