GLENS FALLS INSURANCE COMPANY, A CORPORATION V.
J. L. LONG AND J. M. LONG.

September 10, 1953.

Record No. 4120.

Present, All the Justices.

The opinion states the case.

*Hughes, Little & Seawell, John W. Winston, Jr.* and
*Harry E. McCoy, Jr.,* for the plaintiff in error.

*Carlton E. Holladay,* for the defendants in error.

MILLER, J., delivered the opinion of the court.

Action was instituted by J. L. Long and J. M. Long against Glens Falls Insurance Company to recover upon a policy of insurance. From a verdict and judgment for $3,000 in favor of plaintiffs, the corporation appealed.

The claim against defendant arose out of the total loss of a 19-foot Higgins de luxe utility runabout boat that sank in the waters of the James River on June 2, 1949, and was never located.

The Higgins runabout was acquired new by plaintiffs in July, 1948. At that time they purchased of defendant a $3,000 policy of marine insurance. It was term insurance and covered the boat, its hull, machinery, etc., for one year next ensuing from July 16, 1948.

There is no controversy about the amount of the judgment, and it is conceded that the policy was in force and that the runabout when lost was within the waters and area covered by the policy. The only question in dispute is whether the loss resulted from a risk insured against.

The material parts of the policy follow:

"Touching the adventures and perils which we, the Assurers are contented to bear and take upon us, they are of the Harbors, Bays, Sounds, Seas and Waters as above named, Fire, Explosion, Collision, Assailing Thieves, Theft of entire vessel, Jettison, Barratry of the Master and Mariners *and all other like marine perils*, losses and misfortunes that shall come to the hurt, detriment or damage of the said vessel, or any part thereof.

"This insurance also to cover, subject to the special terms of this Policy, loss of and/or damage to hull or machinery through the negligence of Master, Mariners, Engineers, or Pilots, or through bursting of boilers, breakage of shafts, *or through any latent defect in the Machinery or Hull* (excluding, however, the cost and expense of repairing or renewing the defective part), or through contact with aircraft, or through docking, undocking or changing docks, provided such loss or damage has not resulted from want of due diligence by the owners of the vessel, or any of them, or by the manager." (Italics supplied.)

From the date of its purchase the boat was kept in the waters of James River until September 15, 1948, and when it was not in use, it was moored to a buoy off Scotland Wharf, Surry County, Va.

On September 15, 1948, it was removed from the river and stored in a garage at J. L. Long's home until the latter part of May, 1949. Sometime before the runabout was put back in the water on May 26, 1949, J. M. Long checked its bottom, examined the hull, sanded off the rough spots, applied a heavy coat of lead paint and changed the oil. The boat was examined when the paint was applied and no defect found. When returned to the water, it was carefully handled and no damage inflicted. For the ensuing week it was kept tied off shore to a mooring buoy and was used but once prior to its ill-fated trip.

On June 2, 1949, J. M. Long and two companions undertook to use the boat for a fishing trip. Before starting Long checked the oil and looked in the bottom; there was no water in it, and the runabout appeared to be in good condition. He testified that, "As far as my eye could see, there was absolutely nothing wrong with the boat. * * * To the best of my knowledge, she was seaworthy."

The day was clear and warm but the water a little "choppy." The boat was headed out into the river at about half speed and "ran perfectly" with the bow slightly elevated. Long, who was steering, was seated with his back toward the stern and his feet resting on a solid, level, removable platform laid in the hull, making a false or second bottom. The exact distance to the spot where they wished to fish is not given but was apparently not over two or three miles. On this short trip the boat was coursed between "two sets of fishing stakes," but no one was conscious of striking anything. After their destination was reached, the motor was cut off. When the boat settled level on the river, Long felt water slosh upon his back. He then looked and water was visible in the bottom and had risen around his feet where they rested on the platform. Examination disclosed that the seacock was intact

but water could be seen coming in "from the front." The engine was started and speeded up in an attempt to reach shore. However, the water accumulated rapidly and in such quantity that the bow would not lift or get "up on a plane." Thus, the point where the water entered the bow could not be raised above the water line by the speed and momentum of the runabout. It continued to rise in the hull until it "chocked the motor down." The occupants thereupon put on life preservers and abandoned the boat, which sank in a few minutes.

It is admitted that the boat was new and was seaworthy when the policy was issued. Fairly appraised, the proof is sufficient to establish that she was seaworthy when returned to the water on May 26, 1949, and when the trip to the fishing grounds was begun. No proof was or could be offered to show the exact cause of entry of the water or the precise point where it come into the bow.

Plaintiffs contend that proof of seaworthiness before the trip began and sinking from entry of water into the hull raised a presumption that the loss was occasioned by "perils of the sea" or from "latent defects in the machinery or hull." They say that this cast upon the insurer the obligation to rebut that presumption, and since it failed so to do, the finding by the jury in their favor must be sustained.

It is conceded that the words "marine perils" used in the policy have the same legal significance as the phrase, "perils of the sea," that is more commonly used.

Defendant asserts that mere proof of seaworthiness and entry of water into the hull from an unknown cause is insufficient to raise a presumption that the loss was due to "perils of the sea" as that term is understood and applied, and that proof of seaworthiness and entry of water is not alone sufficient to recover under the provision of the policy insuring against "any latent defect in the Machinery or Hull. * * * " Defendant therefore insists that it was incumbent upon plaintiffs to prove, without benefit of any presumption, that the loss was due to a peril of the sea or occasioned by latent defects in the machinery or hull.

The phrase, "perils of the sea," is thus defined in 45 C. J. S., Insurance, sec. 854, p. 934:

"Perils of the sea embrace all kinds of marine casualties, such as shipwreck, foundering, stranding, collision, and every species of damage done to the ship or goods at sea by the violent action of the wind or waves. They do not embrace all losses happening on the sea, or a peril whose only connection with the sea is that it arises aboard ship, or all damage of which the sea is the cause, but only those perils which are of the sea."

However, when "perils of the sea" are insured against, the term must be construed and applied with reference to the kind of craft covered, the use contemplated, and the waters in which it is to be employed. *Klein* v. *Globe & Rutgers Fire Insurance Co.*, 2 F. (2d) 137.

The term, "latent defect," is defined in 26 C. J. S., Defect, p. 670, thus:

"A defect not manifest, but hidden or concealed, and not visible or apparent; a defect hidden from knowledge as well as from sight; specifically, a defect which reasonably careful inspection will not reveal; one which could not have been discovered by inspection. * * * "

The view urged upon us by defendant is adhered to and stated in the following decisions:

" * * * It cannot in reason be said that sea water was the efficient, the proximate cause of the cargo damage, because no other cause for that damage has been disclosed. As there must have been an efficient cause permitting the sea water to enter, so long as that cause remains undisclosed it cannot be said that the damage has been shown to have resulted from causes within the scope of a sea peril * * * ." *The Folmina*, 212 U. S. 354, 362, 29 S. Ct. 363, 53 L. ed. 546.

In *Watson* v. *Providence Washington Ins. Co.*, 106 F. Supp. 244, a vessel constructed in 1945 and believed to be seaworthy when insured for a term of one year on June 30, 1950, sprang a leak and sank in calm water on September 14, 1950. At page 246 the court said:

"In my opinion, according to the preponderance of authorities, the insured ordinarily is not entitled to recover under a marine insurance policy when the insured vessel sinks in calm water and fair weather without explanation." (Appeal dismissed in 201 F. (2d) 736 because not perfected as required by law.)

· "But where the question is, whether the loss has arisen from any of the perils insured against, the burden of proof, as in other cases, is upon the plaintiff. * * * if it appears from the proof thus furnished, and the circumstances attending, that the vessel was lost by springing a leak and foundering in moderate weather, the presumption is that this arose from weakness and internal defect; and the burthen of proof is upon the plaintiff, to show that it arose from stress of weather, or from collision, or other external injury of an extraordinary character, coming under the denomination of perils of the sea. * * * " *Seth Paddock* v. *The Franklin Insurance Co.*, 11 Pickering 227, 237.

Other decisions of somewhat similar import are: *Union Marine Insurance Co.* v. *Charles D. Stone & Co.*, 15 F. (2d) 937; *Klein* v. *Globe & Rutgers Fire Insurance Co.*, *supra*; *Fine* v. *American Eagle Fire Insurance Co.*, 32 N. Y. S. (2d) 21.

Sustaining plaintiffs' contention that proof of seaworthiness before a voyage and of entry of water into hull by which the boat is sunk is sufficient to raise a rebuttable presumption that its loss was occasioned by a peril of the sea or some latent defect are the following texts and decisions:

" * * * Where no positive cause is shown for the sinking of a vessel and where it is shown that the vessel was seaworthy before the loss, proof of the loss is sufficient to throw on the insurance company the burden of proving that the cause of loss was unseaworthiness, or was not a peril insured against; but this rule is applicable only where the seaworthiness of the ship has been established and where the cause of loss is unknown * * * ." 46 C. J. S., Insurance, sec. 1320(c)(1), p. 449.

"The Schlesinger sank in 840 feet of water. It is impossible to ascertain the precise cause of the disaster. But, even though the jury might not safely conjecture what it was, they could nevertheless conclude, as they did in *Anderson* v. *Morice*, that it must have resulted from a peril of the sea or that there must have been a hidden defect in the hull, and in either case the loss was covered by the policy. * * * " *Massey Steamship Co.* v. *Importers & Exporters Insurance Co.*, 153 Minn. 88, 95, 189 N. W. 415.

" * * * She was insured against 'perils of the sea.' When a vessel is seaworthy, as this one was found by the jury to be at the time of starting on her return voyage, and while upon her voyage sinks from a leak that develops during her voyage, as was the case here, it is quite beyond us to view her loss other than as a probable result of a peril of the sea, even though the cause of the development of the leak which ultimately results in her sinking cannot be ascertained. * * * " *Delanty, et al.* v. *Yang Tsze Ins. Ass'n, Ltd.*, 127 Wash. 238, 248, 220 P. 754.

Other decisions and authority of like effect are: 29 Am. Jur., Insurance, sec. 1449, p. 1088; 31 A. L. R. 1378-1383; *Paddock-Hawley Iron Co.* v. *Providence-Washington Insurance Co.*, 118 Mo. App. 85, 93 S. W. 358; *Patrick* v. *Hallett and Bowne*, 1 Johnson's Reports 241 (N. Y.); *James A. McAllister & Co.* v. *Western Assurance Co.*, 218 N. Y. S. 658; *Brown, et al.* v. *Jerome*, 298 F. 1; *Zillah Transportation Co.* v. *Aetna Insurance Co., et al.*, 175 Minn. 398, 221 N. W. 529; *Moores* v. *Louisville Underwriters*, 14 F. 226; *Boat Service Co., Inc.* v. *National Union Fire Ins. Co.*, 191 So. 707 (La. App.).

Decisions stating the respective views relied upon by plaintiffs and defendant have been collected and commented upon in 3 *Cooley's* Briefs on Insurance, 2d ed., p. 2019, *et seq.*, and 8 *Couch* on Insurance, sec. 2249.

This boat was shown to have been new, and the testimony tended strongly to establish seaworthiness before and at the time of the trip of June 2, 1949. Within an hour it had filled with water and sunk. This affirmative evidence

was uncontradicted in any particular. There was nothing whatever to indicate unseaworthiness unless it be the sudden and unexplained entry of water. The presumption that arose from the affirmative-proof was not overcome solely by that fact; and defendant offered no evidence to rebut it. The proof sustains a finding that the boat foundered because of a peril of the sea or from a latent defect, both of which risks were assumed by the insurer.

For the reasons stated the verdict and judgment will be sustained.

*Affirmed.*