410 So.2d 993 (1982)
PROPRIETORS INSURANCE COMPANY, Appellant,
v.
Yetta SIEGEL, Appellee.
No. 80-2108.
District Court of Appeal of Florida, Third District.
March 16, 1982.
*994 Hayden & Milliken and John D. Kallen, Miami, for appellant.
Greenfield & Duval and Joseph Robert Miertschin, Jr., Fort Lauderdale, for appellee.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
BASKIN, Judge.
Proprietors Insurance Company seeks reversal of a summary judgment which established that Yetta Siegel's yacht, the Carole, was covered by Proprietors' $100,000 policy, insuring it against perils of the sea[1] and negligence of the charterers,[2] when it sank. Our examination of the record before us discloses an absence of genuine issues of material fact; we therefore affirm the trial court's decision.
*995 Appellee contended that she was entitled to recover for the loss of the Carole under the policy issued to her by Proprietors. The policy provided coverage for perils of the sea and negligence of the charterer for a one-year period during which the Carole was to be used for commercial and charter sport fishing. In affirmative defenses, Proprietors asserted that the loss of the Carole was not the result of an enumerated peril and that Yetta Siegel had failed to obtain Proprietors' consent before chartering the yacht. Proprietors also contended that Mrs. Siegel had breached express warranties of seaworthiness by failing to take appropriate action when she first learned of the damage to the yacht. Upon motion, the court entered summary judgment in favor of appellee, finding that the policy provided coverage in the amount of $100,000 and that Proprietors was liable for the loss.
In determining whether the court ruled correctly, we must consider whether affidavits filed in support of the motion for summary judgment established that appellant's affirmative defenses failed to create any genuine issue of material fact; whether Yetta Siegel proved that the loss of the Carole was the result of an insured peril; whether appellee breached her express warranty to exercise due diligence and maintain the Carole in a seaworthy condition; and whether appellee's failure to obtain Proprietors' written consent prior to chartering the Carole voided the policy. We shall consider each issue separately.
Turning first to the sufficiency of the affidavits filed in support of the motion for summary judgment, we reiterate the basic principle that the movant must establish the non-existence of genuine issues of material fact in order to prevail. Arlen Realty, Inc. v. Penn Mutual Life Insurance Co., 386 So.2d 886 (Fla. 1st DCA 1980). The plaintiff must either disprove affirmative defenses or establish their legal insufficiency. Howdeshell v. First National Bank of Clearwater, 369 So.2d 432 (Fla.2d DCA 1979); Johnson & Kirby, Inc. v. Citizens National Bank of Fort Lauderdale, 338 So.2d 905 (Fla.3d DCA 1976). The burden of proving the existence of triable issues does not shift until the movant has met his burden of proving the non-existence of genuine triable issues. Holl v. Talcott, 191 So.2d 40 (Fla. 1966).
In the sworn complaint and affidavits, Yetta Siegel averred that she owned the vessel when it was lost at sea; that the vessel was insured; that Harry Siegel, Yetta's agent, notified Proprietors of the loss; and that the vessel was seaworthy when it was transferred to the charterer. Yetta Siegel's sworn proof of loss stated that two weeks after the Carole left Miami, she received notice that the propellers had been damaged when the Carole struck some rocks. A few days later, she was informed that the damage was greater than had at first appeared and that the boat had been beached, requiring hull repairs in order to return to Miami. Mrs. Siegel stated that she was advised that the Travel Man, a boat owned by David Travels and captained by Judd Bergen, had been hired by the charterer to tow the Carole back to Miami and that the Travel Man had towed the Carole into deep water where it sank. She was unable to obtain information concerning repairs made by the charterer. Proprietors, however, filed no affidavits in support of its affirmative defenses.[3] Reviewing appellee's *996 sworn complaint, sworn proof of loss, affidavits, and other documents filed in support of her motion, we find that she established the absence of genuine issues of material fact[4] and was entitled to summary judgment.
Next, we consider whether the loss of the Carole resulted from an insured peril. Proprietors contends that Mrs. Siegel did not have personal knowledge of the exact cause of the sinking and was therefore precluded from proving that the loss was caused by a peril within the policy's coverage.
Appellee claimed that the sinking was caused by a peril of the sea, namely, negligence of the charterer. Her exhibits disclosed that at the time she transferred the Carole to the charterer, the Carole was seaworthy. Thus, she maintains, the charterer's failure to return the Carole gave rise to a presumption that he was negligent. Rojas v. Robin, 230 La. 1096, 90 So.2d 58, 65 A.L.R.2d 1218 (1956). Negligence of the charterer is listed as an insured peril in Proprietors' policy, distinct from perils of the sea.
The owner of a seaworthy ship need not prove the specific cause of loss as a prerequisite to recovery. When no other cause of loss is shown, a presumption that the loss was occasioned by a peril of the sea attaches. Boston Insurance Co. v. Dehydration Process Co., 204 F.2d 441 (1st Cir.1953); Fireman's Fund Insurance Co. v. Globe Navigation Co., 236 F. 618 (9th Cir.1916); Mattson v. Connecticut Fire Insurance Co., 80 F. Supp. 101 (D.Minn. 1948); Rojas v. Robin, supra; Land v. Franklin National Insurance, 225 S.C. 33, 80 S.E.2d 420 (1954); Glens Falls Insurance Co. v. Long, 195 Va. 117, 77 S.E.2d 457 (1953); Zillah Transportation Co. v. Aetna Insurance Co., 175 Minn. 398, 221 N.W. 529 (1928); Massey S.S. Co. v. Importers & Exporters Insurance Co., 153 Minn. 88, 189 N.W. 415, 31 A.L.R. 1372 (1922); contra, Klein v. Globe & Rutgers Fire Insurance Co., 2 F.2d 137 (3rd Cir.1924); see Pacific Dredging Co. v. Hurley, 65 Wash.2d 394, 397 P.2d 819 (1964). Recovery is denied if the vessel was unseaworthy from a cause other than those named in the Inchmaree Clause.
In Tropical Marine Product v. Birmingham Fire Insurance Co. of Pennsylvania, 247 F.2d 116 (5th Cir.), cert. denied, 355 U.S. 903, 78 S.Ct. 331, 2 L.Ed.2d 260 (1957), the court discussed the interaction of the "perils of the sea" and Inchmaree clauses in a marine insurance contract. In Tropical Marine, the Sea Pak left Miami in a seaworthy condition and was anchored at Long Key in fifteen feet of water when she began to take on an unusual quantity of water. The Sea Pak headed for harbor but drifted and sank outside the 100 fathom curve where the depth of the water prevented salvage. No explanation for the leak which caused the sinking could be found. The trial court denied coverage, but the appellate court reversed, stating:
When, as the Court found, the unseaworthy condition (leak) developed, after the vessel was at sea and there were then no means by which to remedy it, what happens to the insurance? Does it terminate at the very moment it is needed most? Cf. Henjes v. Aetna Insurance Co., 2 Cir., 132 F.2d 715, 1943 A.M.C. 27, certiorari denied, 319 U.S. 760, 63 S.Ct. 1316, 87 L.Ed. 1711.
Indeed, far from voiding the policy, it was as to just such unseaworthiness that the policy was meant to apply. The Inchmaree clause insures against damage or loss occasioned by latent defects in machinery *997 or hull. Of course, a defect in machinery or a defect in a hull means that the vessel is thereby unseaworthy since, with such defect, the machinery or hull, cannot comply with the classic definition of `reasonably suitable' for the purposes intended. The Silvia, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241; Compania de Navegacion, etc., v. Fireman's Fund Insurance Co., 277 U.S. 66, 48 S.Ct. 459, 72 L.Ed. 787. The only limitation on this is that the defect be latent and one not known or discoverable by the owner or one in privy with him. This is so because, as we held in Spot Pack Saskatchewan Government Insurance Office v. Spot Pack, Inc., supra, [5 Cir., 242 F.2d 385], the phrase `Provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel' does not include acts of the master or crew members merely imputed on notions of respondeat superior.

Id. at 120-21.
Similarly, we conclude that unless a lack of due diligence by Yetta Siegel or her agents has been shown, the loss of the Carole is conclusively presumed to be the result of an insured peril.
Proprietors contends that Harry Siegel failed to exercise due diligence when he permitted the Carole to be towed back to Miami after he learned that it had been beached. Whether due diligence was exercised must be determined from the facts and circumstances of each case. Founders Insurance Co. v. Rogers, 305 F.2d 944 (9th Cir.1962). Here, the question of due diligence depends on whether Harry Siegel, as agent for Yetta Siegel, turned a "blind eye" when he learned the boat had been beached because it had sustained a hole in its hull. Harry Siegel had been told that the boat needed only a plywood patch prior to being towed back to Miami. He learned that the Travel Man was to tow the Carole and later learned that the Carole sank fifteen or twenty minutes after it had been towed out to sea. When he learned of the sinking, Siegel hired a plane and went to look for the Carole.
"Turning a blind eye" means refraining from inquiry.
To disentitle the shipowner, he must, ... have knowledge not only of the facts constituting the unseaworthiness but also knowledge that those facts rendered the ship unseaworthy, that is, not reasonably fit to encounter the ordinary perils of the sea. [This means] not only positive knowledge but also the sort of knowledge expressed in the phrase `turning a blind eye'. If a man, suspicious of the truth, turns a blind eye to it, and refrains from inquiry  so that he should not know it for certain  then he is to be regarded as knowing the truth. This `turning a blind eye' is far more blameworthy than mere negligence. Negligence in not knowing the truth is not equivalent to knowledge of it... . [I]f the shipowner satisfies the Court that he did not know the facts or did not realize that they rendered the ship unseaworthy, then he ought not to be held privy to it, even though he was negligent in not knowing.
Compania Maritima San Basilio S.A. v. Oceanus Mutual Underwriting Association, [1976] 2 Lloyds Law Reports 171, 179 (C.A.) (per Lord Denning, M.R.). Siegel's actions cannot be described as "turning a blind eye." We hold that the owner of the Carole exercised due diligence to keep the vessel seaworthy.
We note that at the time the Carole sank, it was in the charterer's care. Acts of the charterer may not deprive the owner of coverage. Saskatchewan Government Insurance Office v. Spot Pack, 242 F.2d 385 (5th Cir.1957). We therefore conclude that Proprietors may not defeat liability on that ground.
Next, we consider whether Mrs. Siegel's failure to obtain written consent from Proprietors before chartering the Carole rendered the policy void.
The policy provides:
This insurance shall be void in case this policy or the vessel named herein, shall be sold, assigned, transferred or pledged, or *998 if there be any change of management or charter of the vessel, without the previous consent in writing of this Company.
In her application for insurance, appellee stated that she sought to obtain coverage for "uses: Commercial including Charter Sport fishing." The application formed the basis of the insurance contract. Proprietors was clearly informed concerning the vessel's use.
Section 627.409(2), Florida Statutes (1977)[5] provides that a breach of any provision of a wet marine insurance policy or insurance contract shall not render the policy or contract void or constitute a defense unless the breach increased the hazard by any means within the control of the insured. Proprietors has not argued that Mrs. Siegel's failure to obtain its consent prior to chartering the vessel increased the hazard. We therefore reject its contention that the policy was void. See Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).
In conclusion, we hold that appellee sustained her burden of proving that the loss arose from an insured peril and that appellant failed to furnish the court with competent evidence disclosing the existence of genuine issues of material fact. For these reasons, we affirm the summary judgment entered by the trial court.
NOTES
[1] The policy defines as perils:

Touching the adventures and perils which this Company is contented to bear and take upon itself, they are of the waters named herein, fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named herein.
[2] In a provision known as the Inchmaree Clause, a provision designed to expand protection to shipowners, the policy provides:

This insurance also covers loss of or damage to the vessel named herein directly caused by:
Accidents in loading, discharging or handling cargo, or in bunkering;
Accidents in going on or off, or while on drydocks, graving docks, ways, marine railways, gridirons or pontoons;
Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);
Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;
Contact with aircraft, rockets or similar missiles, or with any land conveyance;
Negligence of charterers and/or repairers, provided such charterers and/or repairers are not assured(s) hereunder;
Negligence of master, mariners, engineers or pilots;
provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers of the vessel, or any of them. (emphasis added).
[3] Proprietors relied upon the deposition of Judd Bergen. In its final summary judgment, the trial court found:

The Court has reviewed the pleadings, the affidavits and exhibits attached including the policy of insurance, and the depositions, particularly the deposition of JUDD BERGEN, the deposition claimed by PROPRIETORS to be material to this motion. No affidavit has been filed by PROPRIETORS nor are its pleadings sworn. The Court has heard argument of counsel for all parties, memoranda of law have been filed by the Plaintiff and the Defendant, PROPRIETORS, which have been reviewed and considered by the Court.
The Court being fully advised in the premises finds that the policy of insurance # XX-XXX-XX issued by PROPRIETORS to YETTA SIEGEL was in full force and effect at the date of the loss. PROPRIETORS has raised no issue of fact by answer, pleadings, affidavit, deposition or in any other way as to its liability to the Plaintiff under and pursuant to the clear provisions of the policy of insurance which provides coverage to the Plaintiff in the amount of $100,000.00 for loss of the vessel, less a TWO THOUSAND FIVE HUNDRED ($2,500.00) DOLLAR deductible provision.
Bergen's deposition established that Bergen was the captain of the Travel Man, owned by David Travels, Inc., and that he never attempted to repair or tow the Carole. The deposition did not shed light on any issue involving Proprietors although it exculpated Bergen and David Travels from responsibility for the loss of the Carole. The trial court entered final summary judgment on their behalf.
[4] Although the affidavits filed by Yetta and Harry Siegel contained some hearsay statements, they were admissible to prove that the Siegels exercised due diligence.
[5] Repealed effective October 1, 1982, by 1981 Fla.Laws, ch. 81-318 § 2.